## Alexandria

BORONICA MARIE WRIGHT

v.

ALEXANDRIA DIVISION OF SOCIAL SERVICES

No. 0789-92-4

Decided July 27, 1993

COUNSEL

Lloyd F. Sammons (Sammons & Smith, on briefs), for appellant.

Molly S. Dietrich, Assistant Commonwealth's Attorney (John E. Kloch, Commonwealth's Attorney, on brief), for appellee.

*Amicus Curiae*: American Civil Liberties Union of Virginia (Stephen B. Pershing, on brief), for appellant.

OPINION

**COLEMAN, J.**—Boronica Marie Wright, an infant, by her guardian *ad litem*, appeals the family court's decision to terminate the residual parental rights of her mother, Jennifer Wright. Boronica Wright contends that (1) the mother was denied her right to substantive due process because of ineffective assistance of counsel; (2) the evidence was insufficient to support a finding that the mother's parental rights should be terminated; (3) she and her mother have a constitutional right to maintain some parent-child relationship with each other, even if the circuit court correctly determined that adoption is in her best interest; and (4) termination of parental rights under Code § 16.1-283 violates the Americans with Disabilities Act. For the reasons that follow, we find Boronica Wright's contentions to be without merit. Accordingly, we affirm the trial judge's decision to terminate the residual parental rights of Boronica Wright's mother.

Boronica Wright was the first child born to Jennifer (mother) and Jerrell Wright (father). Jennifer and Jerrell had received assistance from the Alexandria Division of Social Services (DSS) for several months before Boronica was born. DSS provided services to help the

couple find housing, stabilize their financial situation, and modify their pattern of fighting. Boronica was born February 14, 1990. From that day forward, DSS has been involved with the family, ostensibly to protect Boronica from violence and neglect by her parents.

On the day Boronica was born, DSS obtained an emergency removal order based on concerns for the child's safety due to the parents' chaotic lifestyle and history of domestic violence. On February 21, 1990, the Alexandria Family Court (trial court) made a finding of abuse and neglect and entered a final protective order requiring the parents to participate in parenting classes, mental health counseling and anger management. During this period, Boronica remained in the home. In addition, the mother, who is diagnosed with paranoid schizophrenia, was ordered to take her prescribed medication. By March, 1990, due to further complaints of neglect and violence, the court granted legal custody of Boronica to DSS and placed her in foster care. In September, 1990, DSS received physical custody of Boronica. Throughout the period of Boronica's placement in foster care, DSS provided the parents a variety of services designed to remedy the problems of abuse and neglect in the home.

In October, 1990, the father was incarcerated on a statutory rape charge. Before he was released from confinement in March, 1991, the mother gave birth to their second child, a son, born on February 27, 1991. In July, 1991, the son was placed in foster care for approximately six weeks following an incident of abuse in the home. After another incident of violence approximately two months later, DSS filed a petition seeking to remove the father from the home. On December 12, 1991, the trial judge issued a final protective order based on abuse and neglect of the son, ordering the parents to refrain from violence in the home. The father was directed to continue in a sex offender treatment program and was ordered to stay out of the home. The father's visits with his son were to be monitored by DSS.

In February, 1991, the trial judge approved a foster care service plan for Boronica with the goal of return to parent. However, on October 21, 1991, the judge disapproved the plan, noting that "[l]ittle or no appropriate progress has been shown. The home environment for this child remains too hostile and potentially dangerous. The parties' follow-through on programs offered (especially Mr. Wright) has been too inconsistent." A new foster care service plan with the goal of adoption was submitted at the end of that month. The father moved from the area sometime around November, 1991.

On November 15, 1991, after working with the parents for more than eighteen months, DSS filed a petition seeking termination of the residual parental rights of both the mother and father with respect to Boronica. A hearing was held on April 7, 1992. The trial judge found, as required by Code § 16.1-283(B), that the evidence clearly and convincingly established parental neglect and abuse that was not reasonably likely to be corrected in a reasonable time and, as provided in subsection (C), that the parents have been unwilling or unable within a reasonable period to remedy substantially the conditions that led to foster care, despite the reasonable and appropriate efforts of rehabilitative agencies. Thus, the court entered a final order terminating the residual parental rights of both parents. Neither parent has appealed that decision. However, the child, by her guardian *ad litem*, appeals the termination of her mother's parental rights.

## I. INEFFECTIVE ASSISTANCE OF COUNSEL

We first address whether Boronica Wright's mother was denied her right to substantive due process because of ineffective assistance of counsel. Contrary to DSS's contention, we hold that Boronica Wright has standing to raise the issue of whether her mother's constitutional rights were violated where her rights are directly involved because termination of the parent-child relationship is at stake. A party has standing in a case if he or she "allege[s] such a *personal stake in the outcome of the controversy* as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions." *Duke Power Co. v. Carolina Env. Study Group*, 438 U.S. 59, 72 (1978) (quoted in *Cupp v. Board of Supervisors*, 227 Va. 580, 589, 318 S.E.2d 407, 411 (1984)) (emphasis added in *Cupp*).

In cases involving parental rights, the rights of the child coexist and are intertwined with those of the parent. The legal disposition of the parent's rights with respect to the child necessarily affects and alters the rights of the child with respect to his or her parent. Boronica Wright has a "personal stake in the outcome" of the proceeding to terminate her mother's parental rights and, therefore, has standing to challenge the propriety of the trial judge's decision to terminate those rights.

Notwithstanding that Boronica Wright has standing to raise her mother's constitutional right to effective assistance of counsel, she has not provided this Court with evidence or any basis on which we can

determine that the mother did not receive effective assistance of counsel. The essence of Boronica Wright's claim is that the mother's attorney presented only one witness, the mother, and failed to develop other evidence to rebut DSS's evidence of parental unfitness. However, Boronica Wright made no assertion that evidence existed in favor of the mother that could have been developed. Indeed, Boronica Wright, who had the same right and opportunity through her guardian *ad litem* to present such evidence at trial, did not do so. Boronica Wright did not question during trial whether her mother was being effectively represented, nor did she contend that evidence was available that could or should have been presented on her mother's behalf. The mother has not questioned or raised the issue whether her counsel effectively represented her. Nothing in the record indicates that the mother's counsel failed to present favorable evidence that was available to his client. Without at least a colorable claim of ineffective assistance of counsel, no basis exists to remand the case to the trial court for the purpose of possibly submitting evidence of the mother's parental fitness.

## II. SUFFICIENCY OF THE EVIDENCE

■ The evidence supports the trial judge's findings and order terminating the mother's residual parental rights as provided by Code § 16.1-283. The burden is on the party petitioning for termination to prove by clear and convincing evidence that parental abuse or neglect threatens the child's life or well-being, that the situation cannot be reasonably corrected after appropriate rehabilitative services have been offered, and that termination is in the child's best interest. *Weaver v. Roanoke Dep't of Human Resources*, 220 Va. 921, 926, 265 S.E.2d 692, 695 (1980).

■ Code § 16.1-283(B) provides that the residual parental rights may be terminated if it is shown by clear and convincing evidence that (1) parental abuse or neglect suffered by the child presents a serious and substantial threat to life, health or development, (2) it is not reasonably likely that the conditions can be substantially corrected or eliminated to allow the child's safe return to his parents within a reasonable period of time, and (3) termination is in the best interest of the child. Code § 16.1-283(B)(2)(a) provides that it shall constitute *prima facie* evidence of abuse or neglect if the parent suffers from a mental or emotional illness or mental deficiency of such severity that there is no reasonable expectation that such parent will be able to undertake

responsibility for the care needed by the child in accordance with his or her age and state of development.

Under Code § 16.1-283(C), residual parental rights also may be terminated if (1) the parents, without good cause, have been unwilling or unable, within a reasonable period not to exceed twelve months, to remedy substantially the conditions which led to the child's foster care placement, notwithstanding reasonable and rehabilitative agencies to such end, and (2) it is in the best interest of the child. The child's best interest is the paramount concern, keeping in mind the familial bonds and the rights of both the parents and child to maintain that bond where it can be done without substantial threat to the child's well-being. *Id.*; *see also Banes v. Pulaski Dep't of Social Services*, 1 Va. App. 463, 465-66, 339 S.E.2d 902, 904 (1986).

Boronica was removed from her parents' residence at birth due to incidents of domestic violence that posed a threat to the child. Numerous protective orders were issued in response to the repeated incidents of violence and because of poor parenting. The domestic violence continued unabated, despite social and mental health services, until the father left the area in November, 1991, more than one and one-half years after Boronica had been removed from the home. Although the father, whose parental rights have also been terminated, was the primary source of the violence, he and the mother are still married and have not indicated an intention to divorce. According to an unchallenged avowal by counsel at oral argument, the son has now been removed from the mother's custody.

The mother has received extensive instruction in parenting skills and general life management from DSS. DSS provided various support services from December, 1989, until the termination hearing in April, 1992, including home-based service programs, from October, 1990, until February, 1991 (two hours per day, five days per week), and from April, 1991, through December, 1991 (eventually increased to eight hours per day, five days per week). Home-based services are intensive programs of instruction lasting three months. DSS extended, however, the home-based services to the mother when it became apparent that she required more assistance.

Boronica contends that her mother failed to improve her parenting skills under the DSS programs because the father interfered. However, the mother continued to receive DSS instruction on parenting skills for several weeks after the father left the area in November, 1991, and

despite the DSS services, the mother remained unwilling or unable to improve substantially her parenting skills.

DSS also provided home-based services from April, 1991, until October, 1991, with respect to the son. Nevertheless, the son is developmentally delayed and, according to the expert testimony, this deficiency is due to the mother's failure to interact with the son and stimulate learning activities that are necessary for proper development. This evidence is relevant only in that it tends to confirm that the mother failed within a reasonable time and with extensive services to acquire significant parenting skills. Also, the mother has been diagnosed with paranoid schizophrenia. Without her medication, she experiences psychotic episodes. Both the mother's psychiatrist and a DSS social worker testified that the mother does not take her medication reliably without strict supervision.

In addition, the evidence established that the mother is mildly mentally retarded and that her mental handicap prevents her from being able to integrate the instruction and education provided by DSS into her daily parenting. Contrary to Boronica Wright's contention, from our review of the record, the fact of the mother's mental retardation was not the sole basis for terminating her parental rights. The record and findings by the trial judge show that the mother's parental rights were terminated because of violence, neglect, lack of parenting and budgeting skills, as well as poor management of her mental illness. The mother's mental retardation was only one of many factors that the trial judge considered in determining the mother's parental fitness, and her mental retardation was considered only to the extent that it contributed to the mother's abuse, neglect or general inability to care for a young child's needs. Considering evidence of mental retardation in the context of the effect that the retardation has on developing parenting skills is not inappropriate. *See Helen W. v. Fairfax County*, 12 Va. App. 877, 886, 407 S.E.2d 25, 30 (1991). Consequently, we reject Boronica Wright's claim that her mother was discriminated against on an impermissible basis under the Equal Protection Clause of the Fourteenth Amendment.

In summary, we hold that the evidence is sufficient to support a finding that the conditions leading to Boronica's placement in foster care could not be substantially corrected or eliminated within a reasonable period of time, notwithstanding the reasonable efforts of DSS to remedy the abuse and neglect in the home, and that it is in

Boronica's best interest to terminate her mother's parental rights at this time.

## III. CONSTITUTIONAL RIGHT TO PARENT-CHILD RELATIONSHIP

Boronica Wright contends that she and her mother have a constitutional right to maintain some parent-child relationship with each other, even after the trial judge has determined that it is in the best interest of Boronica to have the mother's parental rights terminated. We do not agree.

█ The Due Process Clause of the Fourteenth Amendment guarantees a parent's liberty interest in "the companionship, care, custody and management of his or her children." *Stanley v. Illinois*, 405 U.S. 645, 651-52 (1972); *see also Santosky v. Kramer*, 455 U.S. 745, 751 (1982); *Quilloin v. Wallcott*, 434 U.S. 246, 255 (1978); *Cleveland Bd. of Education v. LaFleur*, 414 U.S. 632, 639-40 (1974). However, an individual's constitutional rights are not absolute; they must be balanced against competing legitimate interests of the state to protect the welfare of its citizens. *Lassiter v. Dep't Soc. Serv. of Durham City*, 452 U.S. 18, 27 (1981). Thus, although a parent and child have a constitutionally protected parent-child relationship, the state also has a recognized interest in protecting children from abuse and neglect in the home. *Id.*; *see also Stanley*, 405 U.S. at 652-53.

█ When a state infringes upon a parent's constitutional right to the companionship of his or her child in order to protect the child from abuse and neglect, it must satisfy the mandates of procedural due process. *Santosky*, 455 U.S. at 753-54; *Quilloin*, 434 U.S. at 254. Therefore, if the state seeks to sever the parent-child relationship, the state is required to provide the parent with "fundamentally fair" procedures in the termination proceeding. *Id.*; *Lassiter*, 452 U.S. at 33.

█ Before a state may sever completely and irrevocably the rights of a parent in his or her natural child, due process requires that the state support its allegations of parental unfitness by at least clear and convincing evidence. *Santosky*, 455 U.S. at 768-69. Code § 16.1-283 permits complete termination of parental rights only if "clear and convincing evidence" demonstrates that parental unfitness cannot be remedied within a reasonable period of time. The evidence must show that "reasonable and appropriate efforts" were made by social agencies to remedy the conditions leading to foster care by less severe means of

intervention and through rehabilitative services. *Weaver*, 220 Va. at 928, 265 S.E.2d at 696. Only after the failure of those efforts to remedy the conditions leading to foster care may the state sever the parental rights. Thus, Code § 16.2-283 complies with the constitutional mandate of procedural due process. Boronica Wright's mother was afforded the process that she was due in protecting her liberty interest in enjoying the companionship of her child. Nothing in the Constitution guarantees continuation of the parent-child relationship once fundamentally fair procedures have been followed to prove parental unfitness.

## IV. VIOLATION OF FEDERAL LAW

Boronica Wright's claim that the procedures for termination of parental rights under Code § 16.1-283 contravenes the anti-discrimination provisions of the Americans With Disabilities Act, 42 U.S.C. §§ 12101 *et seq.*, was not raised in the trial court at the termination proceeding. Accordingly, the issue is procedurally barred from this Court's review. *See* Rule 5A:18.

For the reasons stated above, the trial judge's decision to terminate the residual parental rights of Boronica Wright's mother is affirmed.

*Affirmed.*

Moon, C.J.,* and Willis, J., concurred.

---

\* On May 1, 1993, Judge Moon succeeded Judge Koontz as Chief Judge.