COURT OF APPEALS OF VIRGINIA

Present:  Judges Elder, Annunziata and Senior Judge Duff
Argued at Alexandria, Virginia

BEVERLY JACKSON

MEMORANDUM OPINION[*] BY
v.          Record No. 2331-94-4     JUDGE ROSEMARIE ANNUNZIATA
DECEMBER 12, 1995
ALEXANDRIA DIVISION OF SOCIAL SERVICES

FROM THE CIRCUIT COURT OF THE CITY OF ALEXANDRIA
Donald H. Kent, Judge

Clare L. McCulla for appellant.

Molly S. Dietrich, Assistant Commonwealth's
Attorney (John E. Kloch, Commonwealth's Attorney,
on brief), for appellee.

Dorathea J. Peters (Peters & Mullins, on brief),
Guardian ad litem for Melody Jackson, an infant.


The appellant, Beverly Jackson ("mother"), appeals the

Alexandria Circuit Court's decision to terminate her residual

parental rights to her daughter, Melody Jackson ("child").  The

mother alleges that the evidence was insufficient to terminate

her residual parental rights pursuant to Virginia Code § 16.1-

283(B).  For the reasons that follow, we reverse.

The child was born cocaine positive on September 21, 1991,

and Alexandria Department of Social Services ("DSS") was granted

legal custody of her soon thereafter.  For most of her life, the

child remained in foster care while her mother made efforts to

complete drug treatment programs prescribed by DSS.  By

mid-September 1993, DSS had concluded the mother's condition had

_____
    [*]Pursuant to Code § 17-116.010 this opinion is not
designated for publication.

not sufficiently progressed and sought to change the foster care service plan goal to adoption and to terminate mother's parental rights. The family court approved the service plan goal of adoption in December 1993 but because of the bond between the mother and her child, the parental rights were not terminated at that time. The court continued the matter until June 1994 to allow the mother to prove that she had remained substance free and had actively participated in treatment. In June 1994 it entered a final judgment terminating the mother's residual parental rights. Following a September 26, 1994 hearing, the circuit court reached the same result.

There is no evidence that, after the child's birth, the mother physically harmed her in any way. During the child's time in foster care, the mother maintained a strong visitation record, and the two carried on a normal mother/daughter relationship. Indeed, both the DSS and the family court judge recognized a positive bond between the mother and her child.

The evidence shows that the mother participated in various treatment programs, with varying degrees of success, since early 1992. She participated in two inpatient programs and maintained fairly regular attendance at Narcotics Anonymous meetings following her discharge from the second program. The mother received somewhat sporadic help from Substance Abuse Services in both Alexandria and Arlington, but her treatment gained regularity over time. By March 1994, the mother was attending

-2-

weekly treatment sessions with the Alexandria Substance Abuse Services. After moving to Arlington in June 1994 the mother contacted Arlington Substance Abuse Services. From August 1994 until the hearing in late September, the mother attended weekly sessions at Arlington Substance Abuse Services, attended weekly group counseling sessions, and went to Narcotics Anonymous meetings two times per week.

Unquestionably, the mother had a drug problem prior to her treatment programs. And, at first, the mother experienced a rocky road to recovery, relapsing within two weeks of her discharge from the first inpatient program in July 1992 and continuing to use drugs until entering the second inpatient program in March 1993. However, there is no evidence that the mother had used drugs in the nearly eighteen months since that time. The evidence reflects that, although she was not enrolled continually in any one treatment program, beginning March 1993 until the date her parental rights were terminated, the mother underwent numerous drug tests, often random, all of which were negative. At the circuit court hearing, witnesses who had observed the mother's previous drug use testified that the mother had not used drugs since March 1993. Betty Richardson-Evans, an expert in substance abuse counselling testified that she saw no sign of the mother using drugs.

Moreover, the prognosis for the mother's future treatment

was positive at the time of the hearing. Although, Ms. Richardson-Evans testified that people who relapse once are more likely to relapse again, she opined that the mother would refrain from using drugs this time. Ms. Richardson-Evans testified that the mother was doing all she could to remain drug-free. The mother testified that she would continue treatment regardless of the result of the custody issue, and Ms. Richardson-Evans testified that she believed the mother would continue drug treatment regardless of whether her parental rights were terminated.

The evidence also shows that the mother had trouble maintaining either consistent housing or employment during the period in question. The mother's continual moving may have been related to family matters over which she had little control. She lived in Fairfax to care for her mother who was dying of cancer. The subsequent moves also prevented the mother from maintaining a consistent treatment program because the Substance Abuse Services are administered by county.

To terminate residual parental rights under § 16.1-283(B), the court must make three findings based upon clear and convincing evidence: (1) that termination is in the child's best interest; (2) that abuse presented a serious and substantial threat to the child's life, health, or development; and (3) that it is not reasonably likely that conditions resulting in abuse can be corrected to allow the child's safe return within a

reasonable time.  E.g. <u>Wright v. Alexandria Div. of Social Servs.</u>, 16 Va. App. 821, 826, 433 S.E.2d 500, 503 (1993), <u>cert. denied</u>, 115 S. Ct. 651 (1994); <u>Kaywood v. Halifax Co. Dept. of Social Servs.</u>, 10 Va. App. 535, 538, 394 S.E.2d 492, 494 (1990). We agree that the mother's drug use resulted in abuse to the child that presented a serious and substantial threat to her. However, we disagree that the evidence clearly and convincingly showed that terminating the mother's parental rights was in the child's best interests.  We also disagree that the evidence clearly and convincingly showed that the mother's condition could not be corrected to allow the child's safe return within a reasonable time from the date of the hearing.

As the DSS stresses, the government's paramount objective is maintaining the best interests of the child.  <u>Logan v. Fairfax Co. Dept. of Human Dev.</u>, 13 Va. App. 123, 128, 409 S.E.2d 460, 463 (1991).  As the mother stresses, it is the government's objective to preserve, whenever possible, the parent-child relationship.  <u>Lowe v. Dept. of Public Welfare</u>, 231 Va. 277, 280-81, 343 S.E.2d 70, 72 (1986); <u>Weaver v. Roanoke Dept. of Human Resources</u>, 220 Va. 921, 926, 265 S.E.2d 692, 695 (1980). Clearly, the two objectives are not necessarily mutually exclusive: the child's best interest may be served by maintaining the parent-child relationship.

The evidence in this case reflects the bond that exists between the mother and her child.  Throughout the child's life,

the mother visited the child regularly, and, other than the mother's drug problems, the two seem to have maintained a normal parent-child relationship. We agree that the instability the child has undergone her entire life does not serve her interests well. However, the record does not demonstrate that the child's interests would be better served by removing the child from her mother.

Undoubtedly, the mother's drug use was the condition that resulted in the abuse of the child. No evidence suggests that the mother abused the child in any other way.

Proof that the mother had abused drugs and had not responded to or followed through with recommended and available treatment is prima facie evidence that the mother's condition would not be corrected to allow the child's safe return within a reasonable time. Code § 16.1-283(B)(2)(b). The mother's somewhat inconsistent participation in drug treatment programs may indicate that her drug abuse would not be corrected within a reasonable time. However, the mother's success in remaining drug-free shows that, though her participation may have been sporadic, she successfully responded to and followed through with treatment. At the date of the hearing the mother had been drug-free for over seventeen months and the prognosis for her future condition was positive. The evidence shows that the mother was well on the road to recovery. It does not clearly and convincingly show that, at the date of the hearing, her condition

would not be corrected within a reasonable time to allow the child's safe return.

Given the mother's progress in remaining drug-free and her positive prognosis for the future, together with the evidence of a sound and close relationship between the mother and her child, we conclude that the termination of the mother's rights was premature and not in the best interests of her child at this time.

Accordingly, the judgment of the trial court is reversed.

<u>Reversed.</u>