COURT OF APPEALS OF VIRGINIA


Present:  Judges Willis, Fitzpatrick and Annunziata
Argued at Alexandria, Virginia


BONNIE PRUDEN
                                    MEMORANDUM OPINION[*] BY
v.         Record No. 0949-96-4     JUDGE ROSEMARIE ANNUNZIATA
                                         JANUARY 7, 1997
FAIRFAX COUNTY DEPARTMENT
 OF HUMAN DEVELOPMENT, ET AL.


              FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                        F. Bruce Bach, Judge

          Dorathea J. Peters (Peters & Mullins, on
          brief), for appellant.

          Dennis R. Bates, Senior Assistant County
          Attorney (David P. Bobzien, County Attorney;
          Robert Lyndon Howell, Deputy County Attorney,
          on brief), for appellee Fairfax County
          Department of Human Development.

          Wayne D. Berthelsen (Freeman & Berthelsen, on
          brief), Guardian ad litem for appellee
          Russell Pruden.



     Bonnie Pruden (mother) appeals from an order of the circuit

court terminating her residual parental rights pursuant to Code

§ 16.1-283(B).  We conclude that the circuit court's findings are

not supported by clear and convincing evidence and, therefore,

reverse its decision and remand the case.

                               I.

     The mother in this case is an alcoholic.  She continued to

drink on a daily basis through the early weeks of her pregnancy,

until she realized she was pregnant.  In March 1990, mother gave
_____
          [*]Pursuant to Code § 17-116.010 this opinion is not
designated for publication.

birth to a son (child).  Her drinking resumed in August 1990 and continued until July 1991, when she entered a detoxification program.  After relapsing, mother entered the program twice more during the Fall of 1991.  During that time, mother was in an abusive relationship with her husband which exposed the child to domestic violence.

In December 1991, the Fairfax County Department of Human Development (county), removed the child from his parents and placed him in foster care, citing continuing domestic violence and substance abuse by the child's parents as its reasons.  At that time, the Fairfax County J&DR Court found the child had been "abused and neglected."  The county prepared a foster care service plan, the goal of which was to return the child to his parents by December 1993.  The plan directed the child's parents to cooperate with alcohol and drug services and mental health evaluations.  In June 1992, mother and her husband separated.

Mother initially sought treatment from the Fairfax County Alcohol and Drug Services, and, in January 1992, she entered a two-week, residential treatment program.  She subsequently entered an eight-week treatment program and, following that, entered a treatment program at the Northwest Mental Health Center (Northwest).  Mother received individual counselling at Northwest from March 1992 through August 1992 and participated in group therapy from June 1992 until March 1993.  During that period, there were some signs that mother had relapsed; however, none of

mother's urine screens evidenced alcohol use.  The record shows mother was not always amenable to being monitored.

By April 1993, mother was asked to leave the Northwest therapy group because she had "gained maximum benefit" from it. Her attitude toward monitoring was not consistent with the program objectives, and her presence was viewed as disadvantageous to other members.

Nonetheless, by June 1993, the county was sufficiently satisfied with mother's progress to return physical custody of the child to her.  Legal custody was restored in December 1993. Thereafter, except for sporadic Alcoholic's Anonymous (AA) meetings, mother did not continue treatment.

In March 1994, mother relapsed.  On her third day of drinking, mother left the child alone while she went to the store to purchase more beer.  She was intoxicated when Child Protective Services arrived soon after her return.

The county removed the child from mother's care, and, on April 4, 1994, the J&DR court again found that the child had been "abused and neglected" by mother.  By May 27, 1994, the county had devised a new foster care service plan, this time with the goal of adoption.  Following a hearing on December 22, 1994, the J&DR court terminated parental rights of both mother and the child's father.  Mother has had no contact with the child since that time.  Both parents appealed, and de novo hearings were conducted in the circuit court in May 1995.

In May 1994, mother began treatment at the Recovery Women's Center, in which she continued to participate at the time of the circuit court hearing.  At the hearing, mother admitted responsibility for her alcoholism and stated that she had not taken a drink since her March 1994 relapse.  Likewise, Kelley Traver, the county's foster care social worker assigned to the case, and mother's counsellors at the Recovery Women's Center, Jean Larkin, Roberta Severo and Judith Leanes, all testified that mother had fully complied with the treatment program and that mother had shown no further sign of relapse.

Leanes further testified concerning the strengths and weakness she perceived in mother:

> What I have notice[d] about [mother], is [that she] has remained abstinent for more than a year.  [She] has consistently attended all required meetings, she has been incredibly compliant, she didn't drink during some real stressful periods in her life, she didn't have a relapse at that point, and I think that that's a strength.

>                 *    *    *    *    *    *    *

> [She] is also very willing to listen to feedback, which was really difficult for her to do in the beginning.  She would be very angry and defensive, that doesn't happen anymore.  If she does get angry, she goes away, thinks about it, and she comes back, but she doesn't drink over it.

>                 *    *    *    *    *    *    *

> [Mother], also has gone to the Women's Center on her own, and taken the Strom inventory test, to find out about career options and choices that are available to her, and anything that has been suggested to her, she tries whole heartedly.  If she has questions,

> if she has problems, if she feels like she
> doesn't understand, she has the ability to
> ask.  She also has the ability to admit when
> she's wrong, and I think that that's a really
> good strength.
>
> *     *     *     *     *     *     *
>
> [Her] limitations are that [she] is an
> alcoholic, and [she] may someday drink again,
> [she] may not someday drink again.  A
> limitation for [mother] might be her thoughts
> where she gets really kind of compulsive
> like, or obsessive, where she needs to kind
> of go back and check, and make sure that she
> has everything done, and that can be a
> limitation.  She always needs to double check
> herself.

Leanes further testified that mother's short term goals included completing treatment at the Recovery Women's Center and that her long term goals included schooling and living with her son. Mother was expected to complete her treatment at the Recovery Women's Center in July 1995.

Pam Wright, a mental health therapist for Arlington County, testified as an expert in substance abuse and as mother's sponsor at AA.  Wright testified that mother had attended AA meetings at least five or six times per week for the preceding twelve months and participated in service work for the group.  Wright described how she and mother worked to create a plan to keep mother sober and that mother had relied on her and abided by her suggestions for successfully implementing the plan.  Specifically, Wright testified as follows:

> [Mother] is working very hard at creating a
> new life for herself.  She is reexamining
> what kind of work she wants to do, what are
> her professional strengths, what kind of

> future she would like to have. She has done
> vocational testing. She has tak[en] the
> Strom Interest Inventory. She has looked at
> career planning. She has done a lot of
> things.
>
>     *     *     *     *     *     *     *
>
> [Mother], emotionally, is much more stable.
> When she feels, -- I guess the thing that I
> would say most about [mother] . . . is when
> she feels jeopardized, she is no longer
> afraid to ask for help, and that's a very
> important part of recovery, is to have that
> humility, to say I need help.

Nancy Colletta, a clinical psychologist who specializes with children, testified as an expert witness for the county. Dr. Colletta had evaluated the child in July 1994 and, based on her evaluation, stated that the child evidenced characteristics of Fetal Alcohol Syndrome (FAS), a condition which would have long term consequences. She also observed emotional problems in the child, including distrust of adults, fear of abandonment, anger at both his mother and foster mother because of his feelings of abandonment, and preoccupation with family violence. She testified that the child was delayed in both language and gross motor skills.

Because of the child's special needs, Dr. Colletta believed that the child's provider would have to provide a stable, predictable environment with clear limits and constant discipline. Dr. Colletta evaluated mother for two hours, during which time she was the first person to inform mother that the child suffered from FAS. Dr. Colletta testified that mother

denied responsibility for the child's problems.  Following her

evaluation of mother, Dr. Colletta observed mother interact with

the child.  At the hearing, Dr. Colletta expressed concern about

mother's ability to meet the child's special needs.  She was

especially concerned that mother did not recognize the child's

problems.  Dr. Colletta recommended that the child be placed in a

permanent home.

At the close of the evidence, the court deferred decision,
stating that

> because of [mother's] efforts in trying to
> rehabilitate herself, and become a sober
> mother for this child, the Court wants, and
> hopefully will find that there is additional
> evidence that she will remain sober in the
> future. . . . [Therefore,] it is my intention
> [albeit reluctantly] to continue this case
> for ultimate decision for approximately four
> months.  During which time, hopefully, Mrs.
> Pruden will at least complete the treatment
> that she is in at this time, recognizing as
> most of these professionals suggest, that
> alcoholics remain in treatment the rest of
> their life.

> \* \* \* \* \* \* \*

> I would ask counsel to prepare an appropriate
> order, and let the record reflect, as well as
> the order, that <u>if [mother] comes through the
> next four months without any recognizable
> problems, the Court, this Judge at least,
> would recommend that the petition be
> dismissed, and the child returned to you,
> after an arrangement of reasonable
> visitation.</u>

(Emphasis added.)

The matter was continued in the circuit court, ultimately

until December 19, 1995, nearly seven months later, when it was

taken up by a different judge. At that point, mother had not seen her child in nearly one year. Following the hearing, the court ordered the termination of both parents' parental rights.[1]

The circuit court found that the county had established a prima facie case pursuant to Code § 16.1-283(B)(2)(b), by proving that mother's proper parental ability had been seriously impaired by her alcoholism and that, without good cause, she had failed to respond to or follow through with recommended and available treatment which could have improved her capacity for adequate parental functioning. We read the court's letter opinion to make an alternative finding as well: that, even in the absence of prima facie evidence established pursuant to Code § 16.1-283(B)(2)(b), the county had met its burden, pursuant to Code § 16.1-283(B)(2), of proving that it was "not reasonably likely that the conditions which resulted in . . . neglect or abuse [could] be substantially corrected or eliminated so as to allow the child's safe return . . . within a reasonable period of time."[2] We conclude that clear and convincing evidence fails to support the court's findings.

---

[1]The child's father did not appeal.

[2]The court concluded that mother "has not demonstrated her ability to substantially correct within a reasonable period of time the conditions that led to [the child's] neglect," having found (1) mother had a long history of relapsing alcohol problems; (2) as recently as September 1995, mother displayed "relapse symptoms"; (3) mother's condition is extremely fragile, and although she has maintained sobriety for a few months, she has done so without the burden of caring for a severely disadvantaged and troubled child; and (4) mother would be unable

- 8 -

An order terminating parental rights permanently severs the parent-child relationship, rendering each a "'legal stranger'" to the other.  E.g., Edwards v. County of Arlington, 5 Va. App. 294, 305, 361 S.E.2d 644, 650 (1987) (quoting Shank v. Department of Social Services, 217 Va. 506, 509, 230 S.E.2d 454, 457 (1976)).  It is a "grave, drastic" action, to be accomplished in "rare" circumstances, id. at 305-06, 361 S.E.2d at 650 (quoting Lowe v. Department of Public Welfare, 231 Va. 277, 280, 343 S.E.2d 70, 72 (1986); Weaver v. Roanoke Department of Human Resources, 220 Va. 921, 926, 265 S.E.2d 692, 695 (1980)), and in contemplation of "'the use, where possible, of alternatives less drastic . . . .'"  Id. at 312, 361 S.E.2d at 654 (quoting Knox v. Lynchburg Division of Social Services, 223 Va. 213, 223, 288 S.E.2d 399, 404 (1982)).  In Edwards, we addressed alternatives, including "[t]hose remedies, which merely effect `a transitory change in the child's custodial status . . . without affecting other parental rights,' [which] are specifically `designed for the case of a parent who shows extenuating circumstances and demonstrates [her] potential for rehabilitation as a fit parent.'"  5 Va. App. at 312-14, 361 S.E.2d at 654-55 (quoting Shank, 217 Va. at 509, 230 S.E.2d at 456); see also Code § 16.1-278.2.  We also addressed, as an alternative, the use of the trial court's discretion to continue a case on its docket "in order to allow
(..continued)
to shoulder such a burden without substantial risk of relapse.

further services to be rendered to a parent in the hope that termination of the parent's residual parental rights would not be necessary."  Id. at 314, 361 S.E.2d at 655.

While the child's best interest is the "paramount concern," e.g., Wright v. Alexandria Div. of Social Servs., 16 Va. App. 821, 827, 433 S.E.2d 500, 503 (1993), cert. denied, 115 S. Ct. 651 (1994), the rights and interests of the parent must also be protected.  Id.; Radar v. Montgomery County, 5 Va. App. 523, 526-28, 365 S.E.2d 234, 235-37 (1988).  A balance of these interests is struck by utilizing the procedural safeguards of Code § 16.1-283.  Edwards, 5 Va. App. at 306, 361 S.E.2d at 650.

Before residual parental rights can be terminated under Code § 16.1-283(B), the party seeking termination must prove by clear and convincing evidence that (1) termination of parental rights "is in the best interests of the child"; (2) the neglect or abuse suffered by the child presents "a serious and substantial threat to his life, health or development" and (3) it is "not reasonably likely that the conditions which resulted in such neglect or abuse can be substantially corrected or eliminated so as to allow the child's safe return to his parent . . . within a reasonable period of time."

The third factor may be established by a prima facie showing that "the parent . . . [has] habitually abused or [is] addicted to intoxicating liquors . . . to the extent that proper parental ability has been seriously impaired and the parent, without good

- 10 -

cause, <u>has not responded to or followed through with recommended</u> <u>and available treatment which could have improved the capacity</u> <u>for adequate parental functioning</u>."  Code § 16.1-283(B)(2)(b) (emphasis added).  Where the <u>prima</u> <u>facie</u> case is overcome, the party moving for termination is put to the burden of proving the factors listed in Code § 16.1-283(B)(2).  <u>Banes v. Department of</u> <u>Social Servs.</u>, 1 Va. App. 463, 466, 339 S.E.2d 902, 904 (1986) (<u>prima</u> <u>facie</u> case overcome where evidence shows parent not offered or provided services by the social agency designed to remedy the conditions leading to the foster care placement); <u>Harris v. Lynchburg Div. Soc. Serv.</u>, 223 Va. 235, 243, 288 S.E.2d 410, 415 (1982) (same).

In the present case, the record makes clear that mother's drinking was the relevant condition which resulted in the child's neglect and abuse and which the county had to prove, by clear and convincing evidence, could not be substantially corrected or eliminated so as to allow the child's safe return to his mother within a reasonable period of time.  Although the child was removed initially due to his exposure to domestic violence as well as substance abuse by his parents, mother separated from her husband in June 1992, and the record reveals nothing to indicate that the child's further exposure to domestic violence was a concern.  Furthermore, the record reveals nothing to indicate that mother's parenting skills, post-removal visitation record, employment status, or housing conditions figured into the

county's decision to remove the child and seek termination of mother's parental rights, except to the extent that mother's drinking affected those factors. Indeed, Kelley Traver, the county's case worker assigned to the matter, testified that the county refused to allow mother to take the child to parenting classes, noting that the county's concern was mother's drinking, not her parenting skills. Moreover, the foster care service plan required mother to follow any and all recommended substance abuse treatment and refrain from any use of alcohol. When mother asked Traver what she should be doing following the child's removal, Traver told her she needed to comply with treatment for her alcoholism. Although it can be reasonably inferred that mother's drinking impaired her parenting ability, the county clearly anticipated that cessation of mother's drinking would cure her impaired parenting. Had the county considered otherwise, it would have been required to provide services to enable mother to remedy her impairment. See, e.g., Banes, 1 Va. App. at 466, 339 S.E.2d at 904.

No evidence supports the circuit court's finding that the county established a prima facie case pursuant to Code § 16.1-283(B)(2)(b). Even assuming the evidence supports a finding that mother's parenting ability was seriously impaired by her alcoholism, the record is devoid of evidence that she failed to respond or follow through with recommended and available treatment which could have improved her capacity for adequate

parental functioning.  The evidence that mother fully complied with and completed her treatment program subsequent to the child's removal is undisputed.  The evidence shows that mother responded to and followed through with treatment programs prior to her relapse as well.  Furthermore, there is no evidence that mother took a drink subsequent to her March 1994 relapse, nearly twenty-one months prior to the end of the hearing.

Moreover, clear and convincing evidence does not support the circuit court's alternative finding that, even in the absence of prima facie evidence established pursuant to Code § 16.1-283(B)(2)(b), the county met its burden, pursuant to Code § 16.1-283(B)(2), of proving that it was "not reasonably likely that the conditions which resulted in . . . neglect or abuse [could] be substantially corrected or eliminated so as to allow the child's safe return . . . within a reasonable period of time."  To the contrary, the weight of the evidence supports a finding that mother had substantially corrected or eliminated the condition, her drinking, which resulted in the child's abuse and neglect.

There is no evidence that mother took a drink during the twenty-one months between her relapse and the circuit court's ruling.  We disagree with the court's characterization of this period as a "few" months of sobriety.  Furthermore, the evidence is undisputed that mother fully complied with her treatment and everything that the county required of her during that time.  In

addition to her treatment at Recovery Women's Center, mother attended AA meetings nearly every day during those twenty-one months. Mother admits that she is an alcoholic and will be for life. However, the evidence shows that mother is not likely to relapse again. Wright opined that relapse was very unlikely even with the stress of caring for the child and mother's pending divorce. Wright testified that mother had been sober since the May hearing and that she knew how to avoid relapse when a relapse warning sign presented itself. Since the initial hearings in May 1995, mother completed her treatment at Recovery Women's Center, began individual therapy, continued to attend AA meetings on an almost daily basis and remained sober.

Furthermore, the circuit court continued the case following the first two days of hearings and established mother's continued sobriety for the proceeding four months and her completion of treatment at the Recovery Women's Center as conditions for dismissing the petition. Such a ruling, in effect, established the "reasonable period" for mother to substantially correct the condition which resulted in the finding of abuse and neglect.

All the evidence shows that mother fulfilled every condition upon which the circuit court premised its "recommendation" that the petition be dismissed within the period specified by the court. Moreover, there was no indication of relapse during that time. The circuit court's reliance on the fact that mother showed "relapse symptoms" as late as September 1995 is misplaced.

The hearing testimony clearly shows that a "relapse warning sign" does not indicate that relapse will occur. Rather, the testimony shows that a "relapse warning sign" is a signal to a recovering alcoholic to be aware of a condition or circumstance that had been an impetus to that person's drinking. By identifying the sign, a recovering alcoholic is able to take preventative measures to avoid relapse. The evidence shows that identifying relapse warning signs makes relapse <u>less</u> likely to occur.

We also find no support for the trial court's finding that mother's condition is extremely fragile and that she would be unable to shoulder the burden of raising the child without substantial risk of relapse. To the contrary, the testimony of Judith Leanes, mother's counselor at the Recovery Women's Center at the time of the initial hearing, and Pam Wright, mother's AA sponsor, depicts mother as stable, confident and able to understand when she needs help and from where to get it. Leanes and Wright testified that mother had accepted responsibility for her situation and had set goals for improving it.

Finally, we find the testimony of the county's expert witness, Dr. Colletta, unpersuasive on the dispositive issue in this case. Initially, we note that Dr. Colletta's opinion regarding mother's inability to meet the child's needs was based on one personal interview which lasted two hours. She based her opinion, in part, on mother's reaction to her findings with

respect to the child. In context, however, those reactions came after Dr. Colletta informed mother, for the first time, that her child suffered from FAS. Such information, it would later be revealed, was incorrect.

Irrespective of the basis for Dr. Colletta's opinion, it is clear that opinion bears no relationship to mother's drinking. Dr. Colletta's focus was on the child's "special needs," and she was concerned that mother could not meet those needs, <u>regardless of her success in treatment</u>. However, the issue is not mother's ability to parent her child notwithstanding her alcoholism. If it were, the county failed to offer or provide services to mother to enable her to remedy that situation and, therefore, the petition for termination would have to be denied. <u>See, e.g.</u>, <u>Banes</u>, 1 Va. App. at 466, 339 S.E.2d at 904. Rather, the issue is mother's ability to correct the condition, her drinking, which led to the child's neglect.[3]

_____

[3]Furthermore, to the extent mother's relationship with the child had deteriorated while the matter was on appeal in the circuit court, as suggested by Dr. Colletta, the result was one created, in good part, by the denial of mother's visitation with the child during that twelve month period. The quality of mother's bonding with the child was not the ground for removing the child at the initiation of the action, and mother exercised visitation with the child throughout the period she was receiving treatment. Visitation was terminated upon the grant of the petition to terminate parental rights by the J&DR court. The circuit court likewise denied mother's motion for visitation pending appeal of the termination decision. The attenuation of the parent-child bond under these circumstances is not surprising; however, consideration of this "system-created" new circumstance in deciding to terminate parental rights appears, at minimum, unjust.

For the reasons stated, the order of the circuit court is reversed.  The case is remanded, therefore, to the circuit court for further proceedings not inconsistent with this opinion.

<u>Reversed and remanded.</u>

Fitzpatrick, J., dissenting.

I respectfully dissent and would hold that the evidence, when considered in the light most favorable to the prevailing party, is sufficient to meet the requirement of Code § 16.1-283(B)(2) that it was "not reasonably likely that the conditions which resulted in . . . neglect or abuse [could] be substantially corrected or eliminated so as to allow the child's safe return . . . within a reasonable period of time."

This is the classic case of a child who came into foster care as a toddler because of parental neglect or abuse, and remains so, six years later.  The evidence established that while the mother clearly has made progress in attempting to remedy her dependency on alcohol, it is still uncertain whether she has been successful.  After an earlier period of sobriety, the Department attempted a return of the child to her.  She relapsed, put the child at risk, and a removal was again required.  The trial court was not required to accept the testimony of mother's expert that relapse despite "stress" was unlikely.

In considering all of the evidence, including the demeanor and credibility of the witnesses, the trial court specifically weighed the history of relapse and the recent display of "relapse symptoms."  It observed that the mother was "extremely fragile on the date of the hearing," that she had "maintained sobriety . . . without the burden of caring" for her child who has special needs, and lastly, that it was in the child's best interest that

the termination of parental rights be accomplished completely and expediently.  I would hold that this decision was not clearly wrong or without evidence to support it.  For these reasons, I would affirm the trial court.