COURT OF APPEALS OF VIRGINIA


Present:  Judges Elder, Felton and Senior Judge Willis


SHAWN BRADLEY HOLLEY

                                          MEMORANDUM OPINION*
v.    Record No. 3397-02-3                    PER CURIAM
                                             JUNE 10, 2003
AMHERST COUNTY DEPARTMENT
 OF SOCIAL SERVICES


              FROM THE CIRCUIT COURT OF AMHERST COUNTY
                      J. Michael Gamble, Judge

            (P. Scott De Bruin; De Bruin & Layne, P.C.,
            on brief), for appellant.

            (J. Thompson Shrader; Jennifer R. Tuggle;
            J. Thompson Shrader & Associates, P.C., on
            brief), for appellee.

            (Wanda Phillips Yoder, on brief), Guardian
            ad litem for Wilson Andrew Holley.


     Shawn Bradley Holley (father) appeals a decision of the

trial court terminating his parental rights to his son Wilson,

pursuant to Code § 16.1-283(B) and (C).  On appeal, father

contends the trial court erred by (1) admitting into evidence

two reports of a court-appointed special advocate (CASA), and

(2) finding the Amherst Department of Social Services (Amherst

DSS) had provided him with adequate services.  We find this

appeal to be without merit.  Accordingly, we summarily affirm the

decision of the trial court.  See Rule 5A:27.

_____

     * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

BACKGROUND

We view the evidence in the light most favorable to the prevailing party below and grant to it all reasonable inferences fairly deducible therefrom. See Logan v. Fairfax County Dep't of Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 462 (1991). So viewed, the evidence established Wilson was born on November 21, 1997 and has never been in father's custody. Wilson remained with his mother, Penny L. Stanley (mother) until he was placed in the care of the Lynchburg Department of Social Services (Lynchburg DSS).

In June 1999, Lynchburg DSS received a child neglect complaint that Wilson had been seen trying to cross a busy city street after he had been left unattended by mother. Lynchburg DSS received additional complaints, and the Lynchburg Juvenile and Domestic Relations District Court awarded Wilson's paternal grandmother, Diane Holley, custody on August 23, 1999.

On October 18, 2000, Diane Holley approached Amherst DSS seeking to place Wilson with it. She explained she could no longer care for Wilson because of interference from mother. Rick Groff, a senior social worker, testified that at approximately the same time he had received a complaint of neglect. The complaint came from the police department. The police had been summoned to Diane Holley's residence. When they arrived, the officers discovered father unconscious in the front yard and Wilson wandering, unattended, in the road. Father was

later convicted of child neglect based upon the incident. Diane Holley signed an entrustment agreement with Amherst DSS, and Wilson was placed with his half-siblings (mother's other children) in the foster care of the Smith family.

On December 21, 2001, Amherst DSS petitioned the court to terminate father's residual parental rights. Between the time of Wilson's foster care placement and the date of the termination petition, father was either incarcerated or in a state hospital for all but an eight-week period. During the eight weeks father was not detained, he was provided supervised visitation with Wilson.

Groff testified he met with father on November 1, 2001, to discuss the requirements for Wilson's return from foster care. Groff referred father to parenting classes, "children in the middle" classes, and counseling. Father made initial contact to receive class schedules but was again incarcerated before beginning any classes or counseling. Father attended his scheduled visits with Wilson for a six-week period before his incarceration.

Father admitted he suffered from mental health problems and alcohol addiction. He was institutionalized at Western State Hospital for depression. Father admitted he was convicted of child neglect following the incident at his mother's house. He had also been twice charged with assaulting his mother, which resulted in one conviction. Appellant had also been convicted

on numerous charges of public drunkenness. At the time of the circuit court hearing, father was incarcerated awaiting trial on charges of hit and run, driving while intoxicated, and driving after having been declared an habitual offender. Father asserted if he gained custody of Wilson he would arrange for the boy to live with his grandmother in Danville, Virginia.

## ANALYSIS

### CASA REPORTS

At trial, Amherst DSS sought to introduce two CASA reports and their attachments. The CASA advocate who prepared the reports was out of the country and unable to testify at trial. Melanie Wright, a CASA advocate manager, testified the reports were prepared by case worker Jill Fernandez. Father objected to the admission of the reports, arguing they contained inadmissible hearsay and that their admission violated his due process rights by depriving him of the opportunity to cross-examine a witness against him.

### Hearsay

Father concedes Code § 9.1-153 allows the court to admit as evidence CASA reports. He also correctly notes that the CASA advocate who prepared the report "may testify if called as a witness." Code § 9.1-153. He argues the statute "violates . . . the hearsay rule . . . ."

> "While in the construction of statutes the constant endeavor of the courts is to ascertain and give effect to the intention

- 4 -

of the legislature, that intention must be gathered from the words used, unless a literal construction would involve a manifest absurdity. Where the legislature has used words of a plain and definite import the courts cannot put upon them a construction which amounts to holding the legislature did not mean what it has actually expressed."

Barr v. Town & Country Properties, 240 Va. 292, 295, 396 S.E.2d 672, 674 (1990) (quoting Watkins v. Hall, 161 Va. 924, 930, 172 S.E. 445, 447 (1934)).

Code § 9.1-153 requires the CASA advocate to "[s]ubmit to the court [] a written report of his investigation in compliance with the provisions of § 16.1-274. The report . . . may include recommendations as to the child's welfare." Code § 16.1-274 directs the advocate to "file such report with the clerk of the court directing the investigation." The CASA reports were properly prepared and filed, and the trial court did not err by admitting the reports and their attachments pursuant to Code § 9.1-153.

## Due Process

Appellant contends the admission of the CASA reports under Code § 9.1-153 violated his due process rights by depriving him of an opportunity to confront the witnesses against him.

When a state infringes upon a parent's constitutional right to the companionship of his or her child in order to protect the child from abuse and neglect, it must satisfy the mandates of procedural due process. Therefore, if the state seeks to sever the parent-child relationship, the

- 5 -

state is required to provide the parent with "fundamentally fair" procedures in the termination proceeding.

Wright v. Alexandria Div. of Soc. Servs., 16 Va. App. 821, 829, 433 S.E.2d 500, 505 (1993) (citations omitted).  In this case, appellant was provided an extensive two-day hearing, was provided the opportunity to cross-examine witnesses against him, including a CASA representative, and his parental rights were terminated only after the trial court concluded the petition was supported by clear and convincing evidence.  Father "was afforded the process that []he was due in protecting h[is] liberty interest in enjoying the companionship of h[is] child. Nothing in the Constitution guarantees continuation of the parent-child relationship once fundamentally fair procedures have been followed to prove parental unfitness."  Id. at 830, 433 S.E.2d at 505.

## SUFFICIENCY

Father argues the evidence was insufficient to support the trial court's conclusion that Amherst DSS provided him all reasonable and appropriate services as required by Code § 16.1-283.

> The statutory language contained in Code § 16.1-283(C)(1) requires "reasonable and appropriate" efforts to be made to provide services.  We must interpret the statutory mandate in accordance with the language chosen by the legislature.  "Reasonable and appropriate" efforts can only be judged with reference to the circumstances of a particular case.  Thus, a court must

- 6 -

determine what constitutes reasonable and appropriate efforts given the facts before the court.

Ferguson v. Stafford Dep't of Social Services, 14 Va. App. 333, 338, 417 S.E.2d 1, 4 (1992).

The record reveals father has been incarcerated or hospitalized for mental illness for most of Wilson's life. During a brief period when he was not detained, he allowed Wilson to wander in the roadway near railroad tracks as he lay unconscious and intoxicated in his mother's yard. Father was convicted of child neglect. Despite being advised to complete parenting classes and substance abuse classes, father did not even start the courses before again being incarcerated. His continued incarceration prevented Amherst DSS from providing father with more extensive services.

> [W]hile long-term incarceration does not, per se, authorize termination of parental rights or negate the Department's obligation to provide services, it is a valid and proper circumstance which, when combined with other evidence concerning the parent/child relationship, can support a court's finding by clear and convincing evidence that the best interests of the child will be served by termination.

Id. at 340, 417 S.E.2d at 5.

We conclude that this record contains sufficient evidence that the trial court did not err in terminating father's

parental rights.  Accordingly, we summarily affirm the decision

of the trial court.  <u>See</u> Rule 5A:27.

<u>Affirmed.</u>