COURT OF APPEALS OF VIRGINIA


Present:  Judges Elder, McClanahan and Senior Judge Coleman
Argued at Salem, Virginia


ANGELA TARANTINI

v.      Record No. 1620-05-3

ROCKBRIDGE COUNTY
 DEPARTMENT OF SOCIAL SERVICES                     MEMORANDUM OPINION[*] BY
                                                    JUDGE LARRY G. ELDER
TONI ANN TARANTINI                                       MAY 9, 2006

v.      Record No. 1666-05-3

ROCKBRIDGE COUNTY
 DEPARTMENT OF SOCIAL SERVICES


            FROM THE CIRCUIT COURT OF ROCKBRIDGE COUNTY
                        Michael S. Irvine, Judge

        Rebecca A. Belew for Angela Tarantini.

        Joshua O. Elrod (Mann Vita & Elrod, L.L.C., on brief), for Toni
        Ann Tarantini.

        Michael A. Groot (H. David Natkin; Robert B. Armstrong,
        Guardian *ad litem* for minor child, on brief), for Rockbridge
        County Department of Social Services.


        In these related cases, Toni Ann Tarantini, mother of three-year-old D. (mother), and

Angela Tarantini, maternal grandmother of D. (grandmother), appeal the trial court's order

terminating mother's parental rights.  Mother concedes she was not personally able to care for

the child but argues the evidence established both that the Department of Social Services (DSS)

failed to meet its burden of investigating placement with a family member and that her mother,

        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Angela, was a suitable custodian. As a result, she argues, the court's termination of her parental rights was an abuse of discretion because a suitable family placement existed. Grandmother's assignment of error is based solely on the court's determination that she was not "an appropriate family placement." We hold DSS met its burden of investigating placement with a family member and that the evidence supports the trial court's conclusion that placement of D. with grandmother was not appropriate. Thus, we hold the evidence supported the trial court's termination of mother's parental rights, and we affirm.

I.

We view the evidence in the light most favorable to the prevailing party below and afford the evidence all reasonable inferences fairly deducible therefrom. Logan v. Fairfax County Dep't of Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 462 (1991). On review, we presume the trial court "thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests." Farley v. Farley, 9 Va. App. 326, 329, 387 S.E.2d 794, 796 (1990). We may not disturb the trial court's judgment unless it is plainly wrong or without evidence to support it. Logan, 13 Va. App. at 128, 409 S.E.2d at 462.

Code § 16.1-283 provides in relevant part as follows:

> A.        . . . .
>
> Any order terminating residual parental rights shall be accompanied by an order continuing or granting custody to a local board of social services, to a licensed child-placing agency or the granting of custody or guardianship to a relative or other interested individual, subject to the provisions of subsection A1 of this section. However, in such cases the court shall give consideration to granting custody to relatives of the child, including grandparents.
>
> *        *        *        *        *        *        *

A1. Any order transferring custody of the child to a relative or other interested individual pursuant to subsection A of this section shall be entered only upon a finding, based on a preponderance of the evidence, that the relative or other interested individual is one who, after an investigation as directed by the court, (i) is found by the court to be willing and qualified to receive and care for the child; (ii) is willing to have a positive, continuous relationship with the child; (iii) is committed to providing a permanent, suitable home for the child; and (iv) is willing and has the ability to protect the child from abuse and neglect; and the order shall so state. The court's order transferring custody to a relative or other interested individual should further provide, as appropriate, for any terms and conditions which would promote the child's interest and welfare.

In <u>Logan</u>, we interpreted this code section to require that, either prior to or in conjunction with a termination of parental rights, "the Department has a duty to produce sufficient evidence so that the court may properly determine whether there are relatives willing and suitable to take custody of the child, and to consider such relatives in comparison to other placement options." 13 Va. App. at 131, 409 S.E.2d at 465; <u>see</u> <u>Hawthorne v. Smyth County Dep't of Soc. Servs.</u>, 33 Va. App. 130, 138, 531 S.E.2d 639, 643 (2000) (holding "<u>Logan</u> and <u>Sauer [v. Franklin County Dep't of Soc. Servs.</u>, 18 Va. App. 769, 771, 446 S.E.2d 640, 642 (1994),] remain good law following the 1998 revision to Code § 16.1-283(A)"). Where a court "[gives] inadequate consideration to placing [a child] in [a relative's] custody as a reasonable alternative to the termination of . . . parental rights," the termination of parental rights must be reversed. <u>Sauer</u>, 18 Va. App. at 770, 446 S.E.2d at 640. As we noted subsequent to <u>Logan</u>, our holding in that case was not "mean[t] to suggest that the Department has a duty in every case to investigate the home of every relative of the child[], however remote, as a potential placement." <u>Sauer</u>, 18 Va. App. at 771, 446 S.E.2d at 642. We did hold, however, that "a grandparent with whom a parent resides is obviously a potential option for placement of the child[] as contemplated by Code § 16.1-283(A)" and the fact "[t]hat the grandmother did not present herself to the Department or the trial court as an alternative placement for the child[] to the termination of [the parent's]

parental rights is not material." Id. at 772-73, 446 S.E.2d at 642. Because the trial court in Sauer heard no evidence or argument about the suitability of grandmother's home, we held the Department failed to meet its burden. Id. at 773, 446 S.E.2d at 642.

In the instant case, mother contends that DSS did not meet its burden of investigating placement with a family member. However, the record establishes that DSS investigated grandmother's suitability as a custodian, and mother does not aver that anyone other than grandmother was, in fact, a suitable custodian. Further, the record establishes that DSS's investigation of other family members, although perhaps not exhaustive, was sufficiently thorough to permit the trial court to conclude DSS met its statutory burden, as interpreted in Logan and Sauer.

The evidence showed that DSS was unable to locate the man mother identified as D.'s father, with whom she described her relationship as brief, or any of his family. Mother's only immediate family members, in addition to grandmother, were mother's brother, Gino, who was twenty years old at the time of the hearing, and grandmother's mother, Agnes Bilisits, who resided in Pittsburgh and had seen D. on only three occasions for no more than a few weeks at a time. DSS indicated in the various foster care plans that it had contacted these family members "in an effort to achieve the goal of placement with relatives." It reported that although "[t]here were extensive periods of time when Uncle Gino was the primary care provider for [D.] during the time [D.] lived with his mother," Gino "has not expressed an interest in providing physical care for [D.]." DSS indicated that "the . . . members" of mother's family "have expressed an interest [only] in visiting with [D.]." Agnes Bilisits, although present at trial and testifying in grandmother's behalf, gave no indication that she had changed her mind about accepting custody of D. This evidence supports the finding that DSS met its burden of "considering whether there

[were any other] relatives willing and suitable to take custody of the child" in lieu of terminating mother's parental rights. See Logan, 13 Va. App. at 131, 409 S.E.2d at 465.

Mother and grandmother contend next that the trial court abused its discretion in concluding grandmother was not a suitable custodian for D. Mother contends additionally that the trial court erred in applying the best interests standard and that it was required to make a specific finding that placement with grandmother would be "unreasonable." We reject these contentions and hold the evidence, viewed in the light most favorable to DSS, supported the trial court's ruling that grandmother was not a suitable custodian for D.

Our case law clearly establishes that, "[w]hen addressing matters concerning a child, *including the termination of a parent's residual parental rights*, the paramount consideration of a trial court is . . . the child's best interests." Logan, 13 Va. App. at 128, 409 S.E.2d at 462 (emphasis added); see also Wright v. Alexandria Div. of Soc. Servs., 16 Va. App. 821, 827, 433 S.E.2d 500, 503 (1993) (holding that, in determining whether termination of parental rights is proper, "[t]he child's best interest is the paramount concern, keeping in mind the familial bonds and the rights of both the parent and the child to maintain that bond where it can be done without substantial threat to the child's well-being"). Further, a trial court is presumed to know and properly apply the law, "[a]bsent clear evidence to the contrary in the record." Yarborough v. Commonwealth, 217 Va. 971, 978, 234 S.E.2d 286, 291 (1977). Unless expressly required by the applicable statute, see, e.g., Code § 20-107.1(F) (requiring that "[I]n contested [spousal support] cases in the circuit courts, any order granting, reserving or denying a request for spousal support shall be accompanied by *written* findings and conclusions of the court identifying the [statutory] factors . . . which support the court's order" (emphasis added)), Code § 20-108.1(B) (requiring court to follow statutory guidelines for calculating child support and to "make *written* findings" of fact justifying any deviation from amount due under guidelines (emphasis added)), a

court is not required to make explicit findings of fact to support its decision, <u>Akers v. Commonwealth</u>, 31 Va. App. 521, 532 n.5, 525 S.E.2d 13, 18 n.5 (2000).

Code § 16.1-283 requires that a court "shall give consideration to granting custody to relatives of the child, including grandparents," and that "[a]ny order transferring custody of the child to a relative . . . shall be entered only upon a finding . . . that the relative . . . is one who, after an investigation as directed by the court," meets certain delineated conditions. However, the statute does not require that the court's findings be explicitly stated on the record, either orally or in writing. <u>Compare</u> <u>id.</u> ("upon a finding") <u>with</u> Code § 20-107.1(F) (requiring "written findings") <u>and</u> Code § 20-108.1(B) (requiring "written findings"). Furthermore, the statute does not speak at all to the findings necessary when the court *declines* to enter an order transferring custody. Thus, as long as the evidence supports the trial court's decision not to award custody to grandmother, the trial court did not err by failing to make an express finding that placement of D. with grandmother would be, as mother phrases it, "unreasonable."

Further, viewing the evidence in the light most favorable to DSS, rather than to grandmother or mother, as we must on appeal, we conclude the record supports the trial court's finding that grandmother was not a suitable custodian for D.

The evidence, viewed in the light most favorable to the Commonwealth, established that grandmother suffered from a variety of psychological problems, including bipolar disorder, for a period of at least eight to eleven years and perhaps longer. Those problems began in 1990, when her own children were about eight and six years old. In 1992, shortly before her son Gino's eighth birthday, grandmother voluntarily relinquished custody of him to DSS, saying she was physically and mentally unable to care for him. Gino remained in foster care until 1996, during which time DSS documented that grandmother's compliance with the requirement that she take parenting classes and attend counseling with Gino was intermittent. DSS also documented that

grandmother resided with a boyfriend who drank alcohol and displayed violent tendencies toward both grandmother and Gino and that Gino was afraid of him. The records also contained information that "Gino had sexually molested" a 2 1/2 year old girl in grandmother's care and that, when confronted by the girl's mother, grandmother told Gino "that she 'wouldn't hold it against him but for him not to mess with her again.'" Other information contained a report of grandmother's "having sex in front of her children." In 1998, grandmother sought help from DSS in dealing with mother, who was then sixteen, saying she was "overwhelmed [by] some of [mother's] behaviors."

The evidence also established that grandmother began receiving social security disability benefits for her bipolar disorder in 1996. Although grandmother claimed not to have needed medication for her disorder since 1998 and not to have been troubled by it since that time, she admitted receiving disability benefits for it until 2001. Further, although the mental health provider, Richard Timura, who examined grandmother in the course of this custody proceeding concerning D. opined that grandmother was "probably functioning without any mental[] disorder symptoms," he expressly conditioned that opinion on the "assum[ption] [that] her reporting of her situation is accurate." Grandmother said on cross-examination that she told Timura she had been treated for bipolar disorder fourteen years earlier, but she admitted she never told him she had received disability benefits for that disorder from 1996 to 2001 because "[he] didn't . . . ask me that." She also told Timura "there were no family issues," saying she did so because there were no family issues at the time he inquired. Thus, the record indicates grandmother was not forthcoming with Timura about her own prior involvement with social services and the impact of her psychological history on her ability to care for her own children.

Similar concerns existed over the accuracy of grandmother's reporting to the Anson County DSS. The Anson County reports indicate grandmother said "she has no issues that

would inhibit her to properly care for the minor child" and that "she has never been involved with Child Protective Services in the past." The reports give no indication that grandmother informed the Anson County DSS evaluator of her history of mental illness, even if she claimed it was then dormant, and she specifically told the DSS evaluator that she had never been involved with Child Protective Services when, in fact, her son Gino had been in the custody of DSS in Virginia for a period of four years. These aspects of grandmother's reporting gave the trial court good reason to question grandmother's credibility at the time of the hearing, as well.

Although these findings alone are sufficient to support the trial court's decision, the court noted additionally the observations of Anson County DSS in its investigation. Those observations included grandmother's failure to present to DSS a concrete plan for secondary child care and the Department's belief, based on what grandmother reported to it at the time of the investigation, that she had insufficient financial resources to permit her to care for D. Although grandmother named a private care provider she planned to use, she provided no details about that individual or the cost of such care.

Finally, although mother expressed her desire at the hearing to have the court give custody of D. to grandmother in lieu of terminating her parental rights, mother had earlier told DSS that she and grandmother "have many issues that stem from [mother's] childhood" when "[grandmother] did not provide [mother] with the love and support she needed" and that she did not want grandmother to have custody.

These factors, taken together and viewed in the light most favorable to DSS, supported the trial court's conclusion that placement with grandmother would not be in D.'s best interest. Thus, we hold the evidence supports the trial court's finding, not separately contested by mother, that the evidence supported a termination of her parental rights under Code § 16.1-283(B).

II.

For these reasons, we hold the evidence, viewed in the light most favorable to DSS, supports the trial court's conclusion that DSS met its burden of investigating placement with a family member and that placement of D. with grandmother was not appropriate. Thus, we hold the evidence supported the trial court's termination of mother's parental rights, and we affirm.

<u>Affirmed.</u>