COURT OF APPEALS OF VIRGINIA


Present:   Judges Elder, Clements and Senior Judge Annunziata


SCOTT WAYNE NEWTON

                                                        MEMORANDUM OPINION*
v.        Record No. 1308-08-3                              PER CURIAM
                                                        NOVEMBER 25, 2008
BRISTOL DEPARTMENT OF
  SOCIAL SERVICES



                    FROM THE CIRCUIT COURT OF THE CITY OF BRISTOL
                              Birg E. Sergent, Judge Designate

            (John B. Coleman, on brief), for appellant.

            (Edward G. Stout; Mark D. Haugh, Guardian *ad litem* for the minor
            children; Curcio & Stout; Haugh & Preas, on brief), for appellee.


        Scott Wayne Newton (father) appeals the trial court's order terminating his parental rights to

his children.  Father contends that the trial court erred by (1) finding that father had not kept in

contact with his children for six months; (2) denying his motion to dismiss because the Bristol

Department of Social Services (Department) had not complied with Code § 16.1-281; and

(3) finding that the Department did not violate father's equal protection and due process rights.

Upon reviewing the record and briefs of the parties, we conclude that this appeal is without

merit.  Accordingly, we summarily affirm the decision of the trial court.  See Rule 5A:27.

                                    BACKGROUND

        We view the evidence in the light most favorable to the prevailing party below and grant

to it all reasonable inferences fairly deducible therefrom.  See Logan v. Fairfax County Dep't of

Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 462 (1991).  So viewed, the evidence

_____
        * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

showed that father and Patricia Nunley (mother) had three children. In 2000, father was found guilty of assault and battery against mother, resulting in the issuance of an emergency protective order. The parties' oldest child was seventeen months old at the time, and the other two children were not born yet.

In 2002, father was charged with assault and battery against mother again. A permanent protective order was in place until May 2004, and father was ordered to have no contact with mother. At that time, the oldest child was three years old, the middle child was ten months old, and mother was five months pregnant with the youngest child.

In March 2004, father was again charged with assault and battery against mother, resulting in the issuance of another emergency protective order. At that time, the oldest child was five years old, the middle child was thirty-two months old, and the youngest child was eighteen months old. On February 8, 2005, father was found guilty of assault and battery against a family or household member, third offense, and was sentenced to five years in the penitentiary. His expected release date is April 20, 2009.

In February 2006, mother was sentenced to six months in jail for contributing to the delinquency of a minor. The Department then took custody of the children. When the children entered foster care, the oldest child and the middle child had anger issues and suffered from anxiety and depression. They began counseling, and since that time, the counselors have seen progress with the children. In fact, all three children have thrived in their foster care placement and bonded well with their foster family.

Mother was released from jail in May 2006; however, she did not contact the Department upon her release. The Department met with father in June and August 2006, before the Department located mother. Father was more concerned about mother than about the children. For a few

months, father sent cards to the children through the Department, although he stopped doing so in October 2006. The Department no longer heard from father after that time.

In May 2007, the Department changed the children's goals to adoption and sought to terminate mother's and father's parental rights. In September 2007, the Bristol Juvenile and Domestic Relations District Court (JDR court) approved the plan and terminated mother's and father's parental rights. Mother did not appeal, but father did. On November 20, 2007, the circuit court held a hearing and the court heard from eight witnesses about the children and father. On May 1, 2008, the circuit court entered an order terminating father's parental rights. Father timely appealed the decision.

## ANALYSIS

When considering termination of parental rights, "the paramount consideration of a trial court is the child's best interests." Logan, 13 Va. App. at 128, 409 S.E.2d at 463. "Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." Martin v. Pittsylvania County Dep't of Social Servs., 3 Va. App. 15, 20, 348 S.E.2d 13, 16 (1986) (citations omitted).

### Sufficiency of the Evidence

Father argues that the trial court erred in finding that he did not maintain contact with the children for six months, pursuant to Code § 16.1-283(C)(1).[1] Father argues that even while incarcerated, he maintained contact with the children.

---

[1] Code § 16.1-283(C)(1) states a parent's parental rights may be terminated if

> [t]he parent or parents have, without good cause, failed to maintain continuing contact with and to provide or substantially plan for the future of the child for a period of six months after the child's placement in foster care notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other

The Department sought termination of father's parental rights pursuant to Code § 16.1-283(C)(1) and (C)(2).[2]

The Department's evidence showed that father had not been in contact with the children since October 2006, even though he had the social worker's contact information and knew that the Department had custody of the children. Father testified that he sent information for the children to mother and his sister, but did not contact the Department. He did not maintain contact with the Department for approximately thirteen months.

When the Department visited him in prison, father appeared more interested in mother than the children. The social worker and CASA worker had to direct his attention to the children. The Department made reasonable efforts to communicate with him - - they visited him twice and provided him with their contact information.

The trial court's major concern with father was the history of violence between him and mother. Father told the social worker that he planned to reunite with mother when he was released from prison. He asked the social worker to keep the children in foster care until his release, which was not until April 2009.

---

rehabilitative agencies to communicate with the parent or parents and to strengthen the parent-child relationship. Proof that the parent or parents have failed without good cause to communicate on a continuing and planned basis with the child for a period of six months shall constitute prima facie evidence of this condition.

[2] Code § 16.1-283(C)(2) states a parent's parental rights may be terminated if

[t]he parent or parents, without good cause, have been unwilling or unable within a reasonable period of time not to exceed twelve months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end.

"It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his [or her] responsibilities." Kaywood v. Halifax County Dep't of Soc. Servs., 10 Va. App. 535, 540, 394 S.E.2d 492, 495 (1990).

> While long-term incarceration does not, per se, authorize termination of parental rights . . . it is a valid and proper circumstance which, when combined with other evidence concerning the parent/child relationship, can support a court's finding by clear and convincing evidence that the best interests of the children will be served by termination.

Ferguson v. Stafford County Dep't of Soc. Servs., 14 Va. App. 333, 340, 417 S.E.2d 1, 5 (1992).

The trial court found that the Department proved "that it is in the best interests of each of the three children to terminate parental rights, and that to return the children to their former home would likely cause a recurrence of the damage already observed to their development." Father's plan to resume living with mother would be "an intolerable situation." Given that the children were doing well in their foster home and that it provided the stability they needed, the trial court did not err in finding that it was in the best interests of the children to terminate father's parental rights.

### Foster Care Plan

Father next contends that his rights were violated because the Department did not consult with him regarding the Department's plans pursuant to Code § 16.1-281.[3]

---

[3] Code § 16.1-281 states that

> [t]he representatives of such department or agency shall involve the child's parent(s) in the development of the plan, except when parental rights have been terminated or the local department of social services or child welfare agency has made diligent efforts to locate the parent(s) and such parent(s) cannot be located, and any other person or persons standing in loco parentis at the time the board or child welfare agency obtained custody or the board placed the child. . . . In cases where either the parent(s) or child is not

Father received notice of all of the Department's plans regarding the children, and he participated in the JDR court's proceedings when the plans were approved. Therefore, his rights were not violated pursuant to Code § 16.1-281.

<u>Constitutional Rights</u>

Father argues that his equal protection and due process rights were violated because the Department blocked his efforts to maintain contact with his children.

The evidence proved that father, unprompted by the Department, stopped contacting the Department in October 2006. Father's incarceration did not limit his ability to maintain contact with the Department; instead, it was his own choice to stop sending letters and cards for the children through the Department.

Father argues that <u>Santosky v. Kramer</u>, 455 U.S. 475 (1982), applies to his situation. However, <u>Santosky</u> held that a state's statute regarding termination of parental rights violated a parent's constitutional rights because the state merely had to prove by a preponderance of the evidence that a parent's rights should be terminated. Virginia, however, requires a clear and convincing evidence standard to terminate a parent's parental rights. Code § 16.1-283 is constitutional. <u>Knox v. Lynchburg Div. of Soc. Servs.</u>, 223 Va. 213, 223, 288 S.E.2d 399, 404 (1982); <u>Helen W. v. Fairfax County Dep't of Human Dev.</u>, 12 Va. App. 877, 407 S.E.2d 25 (1991).

> The Due Process Clause of the Fourteenth Amendment guarantees a parent's liberty interest in "the companionship, care, custody and management of his or her children." <u>Stanley v. Illinois</u>, 405 U.S. 645, 651-52 (1972); <u>see also</u> <u>Santosky v. Kramer</u>, 455 U.S. 745, 751 (1982); <u>Quilloin v. Walcott</u>, 434 U.S. 246, 255 (1978); <u>Cleveland Bd. of Education v. LaFleur</u>, 414 U.S. 632, 639-40 (1974). However, an individual's constitutional rights are not absolute; they must be balanced against competing legitimate interests of the state to protect the welfare of its citizens. <u>Lassiter v. Dep't Soc. Servs. of Durham City</u>, 452 U.S. 18, 27 (1981).

involved in the development of the plan, the department or agency shall include in the plan a full description of the reasons therefor.

- 6 -

> Thus, although a parent and child have a constitutionally protected parent-child relationship, the state also has a recognized interest in protecting children from abuse and neglect in the home. Id.; see also Stanley, 405 U.S. at 652-53.

Wright v. Alexandria Div. Of Soc. Servs., 16 Va. App. 821, 829, 433 S.E.2d 500, 505 (1993).

Father's rights as a parent are weighed against the best interests of the children. Here, the trial court was deeply concerned about the children's mental and physical well-being if they were to return to father's care when he was released from prison. His history of violence and of violating protective orders alarmed the court.

Therefore, father's equal protection and due process rights were not violated.

CONCLUSION

The record supports the trial court's finding that the evidence proved by clear and convincing evidence that father's parental rights should be terminated and that the termination of father's parental rights was in the children's best interests. Code § 16.1-283. Accordingly, we summarily affirm the judgment. See Rule 5A:27.

Affirmed.