COURT OF APPEALS OF VIRGINIA


Present:   Judges Kelsey, Petty and Senior Judge Bumgardner


DEBRA DERR

v.       Record No. 1264-09-1

VIRGINIA BEACH DEPARTMENT
  OF HUMAN SERVICES                          MEMORANDUM OPINION[*]
                                                  PER CURIAM
OSCAR DERR                                    DECEMBER 1, 2009

v.       Record No. 1310-09-1

VIRGINIA BEACH DEPARTMENT
  OF HUMAN SERVICES


            FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
                        A. Joseph Canada, Jr., Judge

            (Elizabeth R. Gold, on brief), for appellant Debra Derr.

            (Ashton H. Pully, Jr.; Counseling & Litigation, P.C., on brief), for
            appellant Oscar Derr.

            (Mark D. Stiles, City Attorney; Christopher S. Boynton, Deputy City
            Attorney; Nianza E. Wallace II, Associate City Attorney, on brief),
            for appellee.

            (Anna Clarke Sas; Virginia Beach Law Group, on brief), Guardian
            *ad litem* for the minor child.


        Debra Derr (mother) and Oscar Derr (father) appeal the trial court's ruling to change the

goal for the foster care permanency plan to adoption and to terminate their visitation with their

child.  Mother and father argue that the trial court erred by (1) granting the change in goal in the

permanency plan because the removal and change of plan were not timely and consistent with

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

statutory guidelines; (2) finding that the evidence was sufficient to satisfy the statutory requirements for a change in goal; (3) finding that the Virginia Beach Department of Human Services (the Department) made reasonable efforts to retain the child with the parents before permitting a change of goal to adoption; (4) finding that the parents did not make timely substantial progress in their efforts to have their child returned to them, necessitating a change in goal; (5) finding that a change in goal was in the best interests of the child; and (6) terminating the parents' visitation with the child. Upon reviewing the record and briefs of the parties, we conclude that these appeals are without merit. Accordingly, we summarily affirm the decisions of the trial court. See Rule 5A:27.

BACKGROUND

The parties' child was born on January 10, 2007. In April 2007, the Department offered in-home services and anger management to mother and father.[1] On August 14, 2007, the Department removed the child because mother and father were involved in a physical altercation with one another while mother was holding the child. Since the parents were unable to make a safety plan, the Department placed the child in foster care. In August 2007, the Virginia Beach Juvenile and Domestic Relations District Court (the JDR court) entered an emergency removal order and preliminary protective order. In October 2007, the JDR court adjudicated the child an abused and neglected child.

The Department offered additional services to the parents. Both parents submitted to a psychological evaluation and parenting evaluation. Mother completed an anger management class and couples/relationship classes, and father completed a batterer's intervention program,

---

[1] The Department had a history of involvement with mother and father because of domestic violence. Mother has two other children, both of whom are in the custody of other relatives. Father had a Child Protective Services finding of abuse against his stepson, mother's oldest child.

- 2 -

couples/relationship classes, and a parenting education class.  From August 2007 until January 2008, mother and father had weekly visitation with the child.  The parties visited together with the child, and then visited separately.

In January 2008, the Department placed the child with mother's sister in California.  The parents' visitation was limited to telephone calls.  In May 2008, the child returned to foster care in Virginia because the California social service workers became concerned when the child failed to thrive and did not bond with her aunt.  During this time period, mother and father were participating in individual therapy and attending relationship groups.  They also started couples therapy.

From May 2008 until November 13, 2008, mother and father each had one-hour weekly visits with the child.

On July 24, 2008, a new foster care plan was filed with the court because, although the parents had complied with the Department's requests, there was no sign of improvement.  The plan asked for a change of goal from return to home to adoption.  On August 26, 2008, the JDR court approved the change in goal.  Mother and father appealed to the trial court.

On November 13, 2008, the trial court reduced the visits to thirty minutes for each parent due to the child's reactions to the visits.  The child threw tantrums when she entered the Department's building for visitation.  The child was more "clingy" on the days of the visits, and in the evenings, the child would scream and clutch her foster mother.

On March 9 and 17, 2009, the trial court heard the evidence and approved the change of goal to adoption.  At the conclusion of the hearing, the guardian *ad litem* moved to terminate the visitation between the parties and the child.  Over the parents' objections, the trial court granted the motion.  Mother and father timely appealed.

ANALYSIS

We view the evidence in the light most favorable to the prevailing party below and grant to it all reasonable inferences fairly deducible therefrom. See Logan v. Fairfax County Dep't of Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 462 (1991). "Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." Martin v. Pittsylvania County Dep't of Soc. Servs., 3 Va. App. 15, 20, 348 S.E.2d 13, 16 (1986) (citations omitted).

Issue 1 – Change in goal

Mother and father argue that the trial court erred in granting the change in goal because the removal and change of plan were not timely or consistent with statutory guidelines.

> In the case of a child who was the subject of a foster care plan filed with the court pursuant to § 16.1-281, a permanency planning hearing shall be held within 11 months of the dispositional hearing at which the foster care plan pursuant to § 16.1-281 was reviewed if the child . . . is under the legal custody of a local board of social services or a child welfare agency and has not had a petition to terminate parental rights filed on the child's behalf, has not been placed in permanent foster care, or is age 16 or over and the plan for the child is not independent living. The board or child welfare agency shall file a petition for a permanency planning hearing within 10 months of the dispositional hearing at which the foster care plan was reviewed pursuant to § 16.1-281.

Code § 16.1-282.1.

The adjudicatory and dispositional hearing took place on October 16, 2007. Code § 16.1-282.1 requires that the petition for permanency planning hearing be filed "within 10 months of the dispositional hearing"; therefore, the petition had to be filed by August 16, 2008. On July 24, 2008, the Department filed the petition for a permanency planning hearing and a new foster care plan requesting a change in goal to adoption. The permanency planning hearing had to be held "within 11 months of the dispositional hearing"; therefore, the hearing had to occur before September 16, 2008. Id. On August 26, 2008, the JDR court held the permanency planning hearing

- 4 -

and entered an order approving the plan with the goal of adoption. The Department met the deadlines required by the statute.

Mother and father argue that the Department acted too quickly in changing the goal from return to parents to adoption, especially since the child was in California for five out of the eleven months that she was in the Department's custody. Mother and father suggest that the hearing should have occurred closer to the statutory deadline in order to provide the parents with more time to "work on their issues." The Department filed its petition twenty-three days before the deadline, and the permanency planning hearing occurred twenty-one days before the deadline. The statute does not require that the Department or court wait until the last possible day to act; instead, it says that the filing shall occur "within" ten months of the dispositional hearing and the hearing shall occur "within" eleven months of the dispositional hearing. Therefore, the statutory requirements were met, and the trial court did not err.

Issue 2 – Evidence was sufficient to satisfy the statutory requirements

Mother and father argue that the trial court erred in finding that the evidence was sufficient to satisfy the requirements of Code § 16.1-282.1. "A preponderance-of-the-evidence standard governs judicial review of the foster care plan recommendations, while the more stringent clear-and-convincing-evidence standard applies to the ultimate termination decision." Najera v. Chesapeake Div. of Soc. Servs., 48 Va. App. 237, 240-41, 629 S.E.2d 721, 722 (2006) (citing Toms v. Hanover Dep't of Soc. Servs., 46 Va. App. 257, 266 & n.3, 616 S.E.2d 765, 769-70 & n.3 (2005)).

The Department met its burden to prove that the evidence was sufficient to change the goal from return to parents to adoption. The Department made reasonable efforts to reunite the child with mother and father. The Department provided numerous services to the parents. Although the parents complied with the Department's requirements, there was no evidence of

any improvement by the parents. The Department removed the child due to domestic violence in the household. During the time that the child was in foster care, the parents completed anger management classes and a batterer's intervention program. They participated in individual counseling. However, their behavior did not improve. For example, mother continued to have difficulty controlling her anger around the child during visitations. On January 20, 2009, the child threw a tantrum. She tried to get away from mother. Mother picked up the child, who arched her back. Mother "gritted her teeth and balled up one of her fists; and with [the child] in her arms became very abrupt in her movement." When mother put the child down, the child retreated against the wall and "rolled into fetal position." Mother and father continued to have loud, serious arguments. On several occasions, a social worker from the Department heard them arguing while she spoke with one of them on the telephone. One social worker testified that the "level of volatility" between mother and father did not decrease over time and, in fact, at some times, it increased.

The Department proved that the parents continued to have volatile behaviors, and the testimony was that it would take years of therapy to help mother and father. The fact that the child was not present during all of the arguments between the parents does not diminish the seriousness of the situation and the potential problems for the child growing up in such a household. See Wright v. Alexandria Dep't of Soc. Servs., 16 Va. App. 821, 824, 433 S.E.2d 500, 502 (1993) (a mother's parental rights were terminated because of the "parents' chaotic lifestyle and history of domestic violence").

The evidence was sufficient to support a change in goal to adoption.

### Issue 3 – Reasonable efforts

Mother and father contend the Department did not make reasonable efforts to retain the child with the parents before changing the goal to adoption.

"'Reasonable and appropriate' efforts can only be judged with reference to the circumstances of a particular case. Thus, a court must determine what constitutes reasonable and appropriate efforts given the facts before the court." Ferguson v. Stafford County Dep't of Soc. Servs., 14 Va. App. 333, 338, 417 S.E.2d 1, 4 (1992).

After hearing the evidence, the trial court concluded that the Department had made reasonable efforts to reunite the child with her parents, but the goal should be changed to adoption. The trial court held that the Department had "done all that they [sic] can." The parties participated in individual counseling, relationship classes, parenting classes, anger management classes, a batterer's intervention program, and couples therapy. The Department also arranged and supervised visits between the child and mother and father. Furthermore, the Department explored placement with a relative, which lasted for five months.

There was sufficient evidence to prove that the Department made reasonable efforts to reunite the child with her parents.

Issue 4 – Mother's and father's progress

Mother and father argue that the trial court erred in finding that they did not make timely and substantial progress in their efforts to have their child returned to them. Mother and father explained that they completed all of the Department's requirements, except for the couples therapy, which they had started.

However, despite all of the services offered to the parents, they had not made significant improvements. They continued to have loud arguments, and mother demonstrated anger around the child in January 2009.

Dr. Kathleen Dring, who testified as an expert witness, stated that mother and father still had significant work to improve their parenting skills. Dr. Dring conducted psychological and parenting

evaluations on both parents. She had not seen significant improvement in either parent's parenting skills over the time that the child was in foster care. Dr. Dring concluded that mother would

> require at least 2 to 3 years of individual, maybe two times per week, therapy, which she is motivated and dedicated to attending and involving herself with, and in conjunction with medication for her mood disorder. Then and only then do I think that she would be – have less chance of being impulsively angry and appropriately nurturing toward [the child].

Dr. Dring concluded that it would take longer for father to improve his parenting skills. She stated,

> I'm not as hopeful with Mr. Derr because of some of the anti-social tendencies that he has. He is not someone who is going to accept any kind of therapeutic interventions very easily. . . . I think therapy with him is going to be difficult and unless he's highly motivated, not going to have much productive outcome. So I am not as – it may take 3 to 4 years, again, but I'm not sure what the outcome could be.

When asked about the effect on the child if she has to wait two to four years for her parents to complete counseling, Dr. Dring explained that "it would have a very detrimental effect on [the child] . . . not to be able to establish a set home and a parenting relationship with some parents if she has to wait for 3, 4, 5 more years."

"It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his [or her] responsibilities." Kaywood v. Halifax County Dep't of Soc. Servs., 10 Va. App. 535, 540, 394 S.E.2d 492, 495 (1990).

Therefore, the trial court did not err in finding that mother and father had not made timely and substantial progress in their efforts to have their child returned to them.

### Issue 5 – Best interests of the child

Mother and father argue that the trial court erred in finding that a change in goal was in the best interests of the child.

When considering matters regarding a child, "the paramount consideration of a trial court is the child's best interests." <u>Logan</u>, 13 Va. App. at 128, 409 S.E.2d at 463.

Contrary to mother and father's assertions, the trial court did explain its decision that a change in goal was in the child's best interests. The trial court complimented the parents for trying and completing many of the Department's requirements; however, it was not enough. The parents did not make substantial progress, which would allow the child to be returned to them. Their anger issues remained, and they needed years of therapy. Meanwhile, the child had been in foster care for approximately nineteen months. The trial court concluded that the child needed "some permanency." The child could not wait any longer to find out when, or if, the parents were able to improve themselves. The evidence supports the finding that a change in goal was in the child's best interests.

Issue 6 – Termination of visitation

Mother and father argue that the trial court abused its discretion in terminating their visitation with the child.

Initially, mother and father were each able to visit with the child for one hour every week. However, in November 2008, the trial court reduced the visitation so that each parent visited with the child for thirty minutes every week. At the hearing in March 2009, the trial court terminated the visitation.

"In matters of custody, visitation, and related child care issues, the court's paramount concern is always the best interests of the child." <u>Farley v. Farley</u>, 9 Va. App. 326, 327-28, 387 S.E.2d 794, 795 (1990). "As long as evidence in the record supports the trial court's ruling and the trial court has not abused its discretion, its ruling must be affirmed on appeal." <u>Brown v. Brown</u>, 30 Va. App. 532, 538, 518 S.E.2d 336, 338 (1999).

The trial court heard evidence of how the visitation negatively affected the child. Before the visits, the child would cry, and after the visits, the child was clingy and cried at night. Her teachers described the negative changes in the child after the visits.

The reduction in visitation time did not improve the child's reactions to visitation. The guardian *ad litem* classified a visitation in January 2009 as "horrific" because the child threw a tantrum and tried to get away from mother. When mother picked up the child, the child arched her back and mother balled her fists. When the child was placed down, she retreated from mother and curled up in the fetal position. Despite the reduction in time, the visitation was continuing to have a detrimental effect on the child.

The evidence supports the trial court's decision to terminate the parents' visitation.

CONCLUSION

For the foregoing reasons, the trial court's ruling is summarily affirmed. Rule 5A:27.

Affirmed.