COURT OF APPEALS OF VIRGINIA


Present:    Judges Haley, Alston and Senior Judge Clements
Argued by teleconference

JERMAINE RIDGLEY

                                                    MEMORANDUM OPINION[*] BY
v.        Record No. 2560-09-4              JUDGE JAMES W. HALEY, JR.
                                                          NOVEMBER 30, 2010
FAIRFAX COUNTY DEPARTMENT
  OF FAMILY SERVICES


                    FROM THE CIRCUIT COURT OF FAIRAX COUNTY
                              Leslie M. Alden, Judge

          Elwood Earl Sanders, Jr. (Kathryn A.K. Untiedt; Law Offices of
          Kate Untiedt, on brief), for appellant.

          May Shallal Kheder, Assistant County Attorney (David P.
          Bobzien, County Attorney; Peter D. Andreoli, Jr., Deputy County
          Attorney; Patrick Stiehm, Guardian *ad litem* for the minor child[1];
          Stiehm Law Office, on brief), for appellee.


        The trial court terminated the parental rights of Jermaine Ridgley  ("Ridgley") to his

child, J.V., pursuant to Code § 16.1-283(C)(2)[2] and Code § 16.1-283(E)(i).[3]  He maintains he

should receive a new parental rights hearing because (1) he was denied effective assistance of

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] By notice dated June 4, 2010 the guardian *ad litem* advised this Court that "he joins the
Fairfax County Department of Social Services in [this] appeal."

[2] Code § 16.1-283(C)(2) reads in part:  "The parent . . . without good cause, [has] been
unwilling or unable within a reasonable period of time . . . from the date the child was placed in
foster care to remedy substantially the conditions which led to or required continuation of the
child's foster care placement . . . ."

[3] Code § 16.1-283(E)(i) reads in part:  "The residual parental rights of a parent . . . may
be terminated by the court if the court finds . . . (i) the residual parental rights of the parent
regarding a sibling . . . have previously been involuntarily terminated . . . ."

counsel and (2) the written evidence supportive of termination was not properly before the trial court.

We conclude that (1) assuming without deciding this Court is a proper forum to address a question of ineffective assistance on direct appeal, we cannot do so where, as here, a transcript of the proceedings was not made part of the record before us, and (2) the evidence for termination, pursuant to both Code § 16.1-283(C)(2) and § 16.1-283(E)(i), was properly considered by the trial court and is sufficient for termination under either statute.

I.

Factual Background

We review the evidence on appeal in the light most favorable to the party prevailing below — in this case the Fairfax County Department of Family Services (hereinafter "DFS") — and grant to that party the benefit of all reasonable inferences deducible therefrom. See, e.g., Stanley v. Fairfax Cnty. Dep't of Soc. Servs., 10 Va. App. 596, 606, 395 S.E.2d 199, 204 (1990).

On October 8, 2008, J.V. was born to Jacqueline Velez, who was hospitalized for mental illness, and Ridgley, who was incarcerated for credit card theft. Two days later, the Fairfax County Juvenile & Domestic Relations District Court ("JDR court") entered an emergency removal order that transferred legal custody of J.V. to the DFS. The JDR court also allowed DFS to perform evaluations and assessments to determine the appropriate foster care goal for J.V. On December 3, 2008, the JDR court held a hearing on the merits, found J.V. was an abused or neglected child, and continued DFS's legal and physical custody of J.V.

On February 9, 2009, the JDR court approved a foster care plan submitted by DFS, with a goal of returning J.V. home or placing him with relatives. On June 16, 2009, the circuit court affirmed the JDR court's termination of Ridgley's residual parental rights to J.V.'s sister, A.V., based on his failure to "remedy substantially the conditions which led" to A.V.'s foster care

placement. In the same month, for the same reason, DFS petitioned for termination of Ridgley's residual parental rights to J.V. At the time, Ridgley remained incarcerated for identity theft and petit larceny, and was facing an additional charge for auto theft in Prince George's County, Maryland. Ridgley's release from incarceration remained unclear at the time of the hearing because the auto theft charge had not yet been resolved. Further, as a result of his continuous incarceration, Ridgley had "never had visitation" with J.V.

Meanwhile, J.V. had been living in the same two-parent foster home, together with his sister, since he was two days old. He had never lived with either of his biological parents, and had "adjusted very well to his placement." While Ridgley pleaded for continuation of his parental rights, he failed to complete any treatment recommendations made as a result of his mental health, alcohol and drugs, parental child, and psychological assessments. In a letter to the court, Ridgley expressed his determination to lead a better life after release and his desire for parental rights, but acknowledged that "the foster parents are doing a terrific job raising the biological parents [sic] kids and I thank them for that." The JDR court terminated Ridgley's residual parental rights to J.V., citing Code § 16.1-283(C) and (E)(i).[4] Ridgley appealed. The circuit court held a hearing on October 22, 2009 and on the same date, entered an order affirming the termination.

Ridgley's trial counsel filed a notice of appeal on November 20, 2009. On December 18, 2009, the circuit court entered an order that found Ridgley indigent, ordered a trial transcript, and appointed new counsel on appeal. At that point, only three days remained to file either the transcript, or a motion for an extension of time to file a trial transcript.

---

[4] The JDR court also terminated Velez's residual parental rights to J.V., a decision Velez did not appeal.

On March 25, 2010, appellate counsel filed a motion, which was granted by our Court, for an extension of time to file both the appendix and the opening brief. However, she did not file for an extension of time to file the trial transcripts until April 6, 2010, more than 60 days after entry of final judgment in the circuit court.[5] In light of Rules 5A:8(a)[6] and 5A:3(b),[7] we denied her motion. See also Jordan v. Price, 3 Va. App. 672, 673, 353 S.E.2d 168, 168 (1987) ("We hold that the transcript must be timely filed, or leave extending the filing date must be granted before the deadline occurs, and not after. Orders extending the time for filing must be prospective and not retrospective.").

On appeal, he claims prior counsel provided ineffective assistance and the trial court improperly considered evidence. Thus, he concludes, he should be given a new trial.

## II.

## Ineffective Counsel

### (A)

Ridgley argues that trial counsel rendered ineffective assistance based on, among other things, his failure to challenge the admission of certain documentary evidence, failure to present

---

[5] Amendments to our Rules of Court became effective July 1, 2010. The amendment to 5A:8(a) extended the deadline for filing a motion to extend the time for filing a transcript to 90 days after the entry of final judgment. Ridgley's April 6 filing of such a motion clearly exceeds even the new, more accommodating, deadline.

[6] Rule 5A:8(a) provides that the transcript becomes part of the record "when it is filed in the office of the clerk of the trial court within 60 days after entry of the final judgment. Upon a written motion filed within 60 days after entry of the final judgment, a judge of the Court of Appeals may extend this time for good cause shown."

[7] "Except as provided in subsection (a) of this Rule, the times prescribed in these rules for filing papers, *except transcripts (Rule 5A:8(a))*, may be extended by a judge of the court in which the papers are to be filed on motion for good cause shown and to obtain the ends of justice." (Emphasis added).

favorable evidence, and failure to timely file the trial transcript for appeal. Appellate counsel concedes on brief that this objection was not preserved. Appellant's Br. at 1.

(B)

This Court has never reversed or remanded a circuit court's termination of parental rights based on ineffective assistance of court-appointed counsel. However, in Wright v. Alexandria Div. of Soc. Servs., 16 Va. App. 821, 826, 433 S.E.2d 500, 503 (1993), we suggested we might do so where there is a "colorable claim of ineffective assistance of counsel." But, as in this case, there was not enough information in the record to determine that the parent was, in fact, denied effective assistance of counsel.

> Notwithstanding that Boronica Wright has standing to raise her mother's constitutional right to effective assistance of counsel, she has not provided this Court with evidence or any basis on which we can determine that the mother did not receive effective assistance of counsel. The essence of Boronica Wright's claim is that the mother's attorney presented only one witness, the mother, and failed to develop other evidence to rebut DSS's evidence of parental unfitness. However, Boronica Wright made no assertion that evidence existed in favor of the mother that could have been developed. Indeed, Boronica Wright, who had the same right and opportunity through her guardian *ad litem* to present such evidence at trial, did not do so. Boronica Wright did not question during trial whether her mother was being effectively represented, nor did she contend that evidence was available that could or should have been presented on her mother's behalf. The mother has not questioned or raised the issue whether her counsel effectively represented her. Nothing in the record indicates that the mother's counsel failed to present favorable evidence that was available to his client. Without at least a colorable claim of ineffective assistance of counsel, no basis exists to remand the case to the trial court for the purpose of possibly submitting evidence of the mother's parental fitness.

Id. at 825-26, 433 S.E.2d at 503.

As in Wright, we cannot find a colorable claim of ineffective assistance of counsel in the record. This is in part because the trial transcript, which was not timely filed, is imperative to assessing trial counsel's representation. See Jenkins v. Winchester Dep't of Soc. Servs., 12

Va. App. 1178, 1185, 409 S.E.2d 16, 20 (1991) ("The burden is upon the appellant to provide us with a record which substantiates the claim of error." (citation omitted). Further, we cannot hold, in light of the Supreme Court's recent decision in Wintergreen Partners, Inc. v. McGuireWoods LLP, 280 Va. 374, 698 S.E.2d 913 (2010), that Ridgley was *ipso facto* denied effective assistance based on counsel's failure to timely file the transcript on appeal.

In Wintergreen Partners, the Supreme Court affirmed summary judgment for the defendant law firm in a legal malpractice case. The defendant law firm had earlier defended the plaintiff, a ski resort, which lost a negligence action brought by an injured skier. On behalf of Wintergreen, McGuireWoods appealed the $8.3 million judgment, but failed to ensure the trial transcripts were timely filed. Thus, the Supreme Court dismissed the ski resort's appeal. Id. at 376, 698 S.E.2d at 914. After the dismissal of its appeal, the ski resort initiated a legal malpractice action against the defendant law firm, but the circuit court granted summary judgment in favor of McGuireWoods. Id. at 376, 698 S.E.2d at 915.

On appeal from summary judgment, the ski resort argued that "had a timely trial transcript been filed in its appeal, it would have been entitled, as a matter of law, to a reversal of the judgment against it because of the jury's inconsistent verdict in finding Wintergreen liable but exonerating its employees." Id. at 378, 698 S.E.2d at 915. A valid legal malpractice involving an appeal requires proof that the judgment would have been reversed had the appeal been properly filed. Id. Since the theories of liability submitted to the jury in the underlying negligence action allowed for inconsistent verdicts, the Supreme Court concluded the ski resort could not show that reversal would have been required, and thus, affirmed summary judgment for the law firm. Id. at 380, 698 S.E.2d at 916.

Similarly, on this record, Ridgley cannot establish that had the transcripts been timely filed, this Court would have found a colorable claim of ineffective assistance under Wright. Accordingly, ineffective assistance cannot be a viable ground for reversal in this case.

III.

Consideration of Evidence Pursuant to Code § 16.1-283(E)(i)

(A)

Ridgley also claims the trial court improperly considered documentary evidence that was submitted to the court, but not admitted into evidence. Among the improperly considered evidence, Ridgley contends, was a prior court order terminating his parental rights to A.V., J.V.'s sibling. We disagree.

(B)

Pursuant to Code § 16.1-296, "an appeal from the juvenile court must be heard *de novo* by the circuit court." Fairfax Cnty Dep't of Family Servs. v. D.N., 29 Va. App. 400, 406, 512 S.E.2d 830, 832 (1999) (citation omitted). "Such an appeal transfers the *entire record* to the circuit court for retrial *as though the case had been originally brought there*." Mahoney v. Mahoney, 34 Va. App. 63, 66, 537 S.E.2d 626, 628 (2000) (*en banc*) (first emphasis added). See also Addison v. Salyer, 185 Va. 644, 650, 40 S.E.2d 260, 263 (1946); Austin v. Commonwealth, 42 Va. App. 33, 37, 590 S.E.2d 68, 70-71 (2003); Alexander v. Flowers, 51 Va. App. 404, 416, 658 S.E.2d 355, 360 (2008). In short, the records of the juvenile court become the records of the circuit court. Further, the circuit court "must consider *all* relevant evidence, even if such evidence had not been considered by the juvenile court." D.N., 29 Va. App. at 406, 512 S.E.2d at 832-33 (emphasis added).

"The records of any judicial proceeding . . . of any court of this Commonwealth shall be received as prima facie evidence provided that such records are authenticated and certified" to be

a true record. Code § 8.01-389. The "'underlying rationale which justifies admitting facts contained in official records . . . [is that] the nature and source of the evidence enhance the prospect of its trustworthiness.'" Owens v. Commonwealth, 10 Va. App. 309, 311, 391 S.E.2d 605, 607 (1990) (quoting Ingram v. Commonwealth, 1 Va. App. 335, 338, 338 S.E.2d 657, 658-59 (1986)).

(C)

Ridgley argues that the trial court abused its discretion in considering the "evidence of termination of parental rights to this child's sibling," which was proved with a June 16, 2009 order of the Circuit Court of Fairfax County that terminated Ridgley's parental rights to A.V., J.V.'s sibling. See J.A. 42-46.

Consistent with the foregoing principles, the trial court did not improperly consider documentary evidence because all such evidence was made part of the record by operation of the law, not, as appellant contends, through the action or inaction of the County Attorney.[8] See Code § 16.1-296; Mahoney, 34 Va. App. at 66, 537 S.E.2d at 628 (stating an appeal from JDR court to circuit court necessarily transfers the "entire record"). Ridgley does not contest the authenticity of the order, nor could he. It was certified by the Clerk of the Circuit Court of Fairfax County to be a true record and, thus, created prima facie evidence that Ridgley's parental rights to A.V., J.V.'s sibling, were terminated. No evidence in the record, or any assertion by Ridgley's counsel on brief or in oral argument on appeal, was offered to rebut that prima facie evidence. Accordingly, the June 16, 2009 order was properly considered by the trial court as a basis for termination pursuant to Code § 16.1-283(E)(i).

_____

[8] While we do not have a transcript to consider, the trial court had the benefit of considering Ridgley's own testimony when it decided to terminate Ridgley's residual parental rights. As appellate counsel writes on brief: "The trial court terminated the father's rights based on entirely proffered evidence on behalf of The Department of Family Services and *the testimony of the father*." Appellant's Br. at 5 (emphasis added).

IV.

Substantiality of Evidence Under Code § 16.1-283(C)(2)

A circuit court's judgment when based on evidence heard *ore tenus* "will not be disturbed on appeal unless plainly wrong or without evidence to support it." Roanoke City Dep't of Soc. Servs. v. Heide, 35 Va. App. 328, 336, 544 S.E.2d 890, 894 (2001); Lowe v. Dep't of Pub. Welfare, 231 Va. 277, 282, 343 S.E.2d 70, 73 (1986).  On review, the Court of Appeals will presume that the trial judge "'thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests.'" Logan v. Fairfax Cnty. Dep't of Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 463 (1991) (quoting Farley v. Farley, 9 Va. App. 326, 329, 387 S.E.2d 794, 796 (1990)).  In reaching its determination, in "'matters of a child's welfare, trial courts are vested with broad discretion in making the decisions necessary to guard and to foster a child's best interests.'" Id. at 128, 409 S.E.2d at 463 (quoting Farley, 9 Va. App. at 328, 387 S.E.2d at 795).

Pursuant to Code § 16.1-296, JDR appeals are "heard *de novo* by the circuit court." D.N., 29 Va. App. at 406, 512 S.E.2d at 832 (citation omitted).  Thus, the circuit court has the entire JDR court record to consider when deciding whether to affirm a termination of parental rights. See Mahoney, 34 Va. App. at 66, 537 S.E.2d at 628.  On this record, we find the trial court did not err in finding the evidence sufficient to terminate Ridgley's parental rights.  According to the foster care plan presented to the circuit court, Ridgley's eventual release date remained uncertain more than a year after J.V. was taken into DFS's custody.  Ridgley's long incarceration prevented him from caring after his son. See Code § 16.1-283(C) (authorizing termination of parental rights, where the parent "ha[s] been unwilling or unable, within a reasonable period of time not to exceed twelve months from the date the child was placed in foster care . . .").  While the twelve-month time period does not prevent a court from considering a parent's post-petition

efforts in deciding whether termination is in the best interests of the child, see Akers v. Fauquier Cnty. Dep't of Soc. Servs., 44 Va. App. 247, 258, 604 S.E.2d 737, 742 (2004), the twelve-month limit "was designed to prevent an indeterminate state of foster care 'drift' and to encourage timeliness by the courts and social services in addressing the circumstances that resulted in the foster care placement." L.G. v. Amherst Cnty. Dep't of Soc. Servs., 41 Va. App. 51, 56, 581 S.E.2d 886, 889 (2003). DFS's original request for an emergency removal order to take J.V. into foster care was granted because J.V. was without parental care or guardianship. At the time of the circuit court termination hearing, more than a year later, the court still did not know when Ridgley would be released from jail. "It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his responsibilities." Kaywood v. Halifax Cnty. Dep't of Soc. Servs., 10 Va. App. 535, 540, 394 S.E.2d 492, 495 (1990).

In any event, where a circuit court terminates parental rights under multiple statutory bases, as here, evidence sufficient for one basis renders a challenge to others moot. See Butler v. Culpeper Cnty. Dep't of Soc. Servs., 48 Va. App. 537, 548-49, 633 S.E.2d 196, 201-02 (2006); Fields v. Dinwiddie Cnty. Dep't of Soc. Servs., 46 Va. App. 1, 8, 614 S.E.2d 656, 659 (2005).

                                                                                          Affirmed.