COURT OF APPEALS OF VIRGINIA

Present: Judges AtLee, Malveaux and Senior Judge Annunziata

RAYONDA RICHARDS

v.      Record No. 1702-16-4

ALEXANDRIA DEPARTMENT OF
 COMMUNITY & HUMAN SERVICES

MEMORANDUM OPINION[*] BY
JUDGE ROSEMARIE ANNUNZIATA
AUGUST 1, 2017

FROM THE CIRCUIT COURT OF THE CITY OF ALEXANDRIA
James C. Clark, Judge

(Tamika D. Jones; Jones Practice, PLLC, on brief), for appellant.
Appellant submitting on brief.

(Richard F. Gibbons, Jr.; Frank G. Aschmann, Guardian *ad litem* for
the minor children, on brief), for appellee.  Appellee and Guardian
*ad litem* submitting on brief.

Rayonda Richards (mother) appeals the orders terminating her parental rights and approving

the goals of adoption for five of her children.[1]  Mother argues that the trial court erred by

terminating her parental rights because (1) she "substantially remed[ied] the conditions that led to

her children's foster care placement and there was good cause for lack of full compliance and the

department of human services therefore did not meet their clear and convincing burden;" (2) "there

were not reasonable and appropriate efforts of social, medical, mental health, or other rehabilitative

agencies in assisting [mother] in remedying the conditions that led to her children's foster care

placement;" and (3) "the evidence was insufficient to merit the termination of her residual parental

rights and she was denied due process based on the procedures used to evaluate whether she

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Mother did not appeal the termination of parental rights order for her child, H.J.

remedied the conditions that led to her children's placement in foster care." We conclude that the trial court did not err, and we affirm the decision of the trial court.

BACKGROUND

We view the evidence in the light most favorable to the prevailing party below and grant to it all reasonable inferences fairly deducible therefrom. See Logan v. Fairfax Cty. Dep't of Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 463 (1991).

So viewed, the evidence establishes that the Alexandria Department of Community and Human Services (the Department) first became involved with mother and her family in 2008, when mother's oldest child was approximately eighteen months old. Mother had a transient lifestyle. She did not have stable or permanent living arrangements and was moving between households, which the Alexandria Juvenile and Domestic Relations District Court (the JDR court) found "not appropriate" for her eighteen-month-old child. Furthermore, mother was consuming alcohol and marijuana in the presence of the child and giving Nyquil to the child so she would sleep. Accordingly, the JDR court entered a preliminary protective order, which required mother to submit to a substance abuse evaluation, a mental health evaluation, and a psychological evaluation, if indicated. She was to follow through with all recommendations. In addition, mother was required to cooperate with the Department and follow all medical instructions for the child, including appointments and medical management. Mother also had to provide her child with a "safe, clean and neglect free home environment." On July 14, 2008, the JDR court entered a final child protective order, confirming the same requirements set forth in the preliminary child protective order. It also entered an adjudicatory order with a finding of abuse and neglect. The protective order was dismissed in February 2009, when mother moved to North Carolina.

When mother returned to Virginia in November 2010, mother had two children and continued to receive services from the Department. In August 2011, the JDR court entered orders

transferring custody of both children to the maternal grandmother. Under the order's terms, any change of custody required the appointment of a guardian *ad litem*, an order mother later violated.

On April 14, 2015, the Department received another referral regarding mother and her children. Mother's two oldest children were living with her again, as were her two younger children, and she was pregnant with her fifth child. The referral stated that mother was drinking and smoking marijuana laced with phencyclidine (PCP) in front of the children and that she was posting her activities on Facebook.

On April 27, 2015, the JDR court entered preliminary protective orders as to the four children. On May 19, 2015, the JDR court entered adjudicatory orders, finding that the four children were subject to abuse and neglect.[2] The JDR court also ordered mother to submit to a drug screen, which came back positive for marijuana.

The following day, the Department filed petitions to remove all four children. After the JDR court granted the petitions on May 27, 2015, mother responded by abducting the children and taking them to the District of Columbia. Shortly thereafter, mother was arrested for doing so, and on August 18, 2015, she was convicted of a felony for violating the custody order. Mother was sentenced to two years in prison, with all, but time served, suspended.

After mother's four oldest children entered foster care on May 27, 2015, the Department provided mother with numerous services, including a parenting coach and visitation. The Department also referred mother to the Community Services Board for substance abuse and mental health services. It required mother to follow through with the recommendations, but mother did not comply.

---

[2] Mother appealed the orders that found the children were abused or neglected. On February 17, 2016, the circuit court entered orders finding that the children were abused and neglected.

In June 2015, the Department assigned Tamara Carter, a social worker, to mother's case. Carter directed mother to follow through with the recommendations for substance abuse and mental health services with the Community Services Board. Initially, mother agreed to do so. When the next service plan was issued, Carter met with mother to discuss the need for mother to regularly attend therapy and Marijuana Anonymous meetings. Mother was not regularly attending either.

On February 25, 2016, the JDR court entered an adjudicatory order finding that mother's youngest child, who was born in August 2015, was abused or neglected. The JDR court ordered the removal of mother's youngest child from her care because the child was present during an altercation between mother and her boyfriend.[3] In addition, the Department learned that mother had taken this child to the doctor only twice since her birth, and the child was behind on her immunizations.

To assist mother with her mental health issues, the Department commissioned a full psychological screening of mother. Mother met with the psychologist, Dr. Mohamed G. Mansaray, and on March 20, 2016, he prepared his report. He concluded that mother presented "with a level of moderate risk for child neglect" and noted that concerns about mother's parenting skills were warranted, concluding that she "presents with sufficient risk for future neglect." Dr. Mansaray recommended that mother participate in individual psychotherapy, one-on-one parenting coaching, a Dialectic Behavior Therapy women's group, and family therapy.

When Carter met with mother to discuss Dr. Mansaray's report and his recommendations, mother took the position that nothing was wrong with her and that she did not need therapy. Mother's therapist, Linh Harbes-Thai, testified that despite her plan for weekly sessions with

---

[3] The incident of domestic violence was brought to the attention of the police by a call from mother in which she claimed that her live-in boyfriend, Pierre Clark, had assaulted her. After arriving and speaking with mother and Clark, the police concluded that, contrary to mother's claim, she had punched Clark in the mouth, creating lacerations to both his upper and lower lips.

mother, beginning on August 12, 2015, by January 28, 2016, mother had only scheduled eight appointments, and of those eight appointments, mother only attended four. After June 21, 2016, mother stopped attending the counseling sessions altogether. Furthermore, mother's long and ongoing history of substance abuse remained unaddressed.

On March 22, 2016, the Department prepared petitions for the termination of mother's parental rights to her five children.

In June 2016, Carter discussed with mother the change of the foster care goal to adoption. Carter explained that if mother was interested in "having any long-term relationship with these kids regardless of the court hearing decision, she would have to still maintain and follow through with services." Mother did not have any questions for Carter about what she was expected to do in the summer of 2016, which was to engage in therapeutic services and parenting coaching, as well as abstaining from the use of illegal substances. The therapy that the Department directed mother to participate in was crucial because it related to her understanding of how her behaviors impacted her parenting. Mother did not indicate any confusion about the program the Department expected her to follow.

As required by Code § 16.1-283(A), the Department investigated possible relative placements for the children. Several relatives initially expressed interest, but did not follow up or later changed their minds. Other relatives were not suitable placements.

On June 28, 2016, the JDR court terminated mother's parental rights and approved the plans with the goals of adoption. Mother timely noted her appeal to the circuit court.

The parties appeared before the circuit court on September 21 and October 7, 2016 to present evidence and argument. At the conclusion of the hearings, the circuit court held that it was in the children's best interests to terminate mother's parental rights pursuant to Code § 16.1-283(C)(2). On October 7, 2016, the circuit court entered orders terminating mother's

parental rights and approving the plans with goals of adoption for all five children. This appeal followed.

## ANALYSIS

"Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." Martin v. Pittsylvania Cty. Dep't of Soc. Servs., 3 Va. App. 15, 20, 348 S.E.2d 13, 16 (1986) (citation omitted). When considering termination of parental rights, "the paramount consideration of a trial court is the child's best interests." Logan, 13 Va. App. at 128, 409 S.E.2d at 463.

*Assignment of error #1*

Mother argues that the trial court erred in terminating her parental rights because she had substantially remedied the concerns that caused the children to be placed in foster care. She notes that she had adequate housing and employment. She was no longer involved romantically with the children's fathers. Furthermore, she asserted that she regularly visited the children and that the visits were appropriate.

The circuit court terminated mother's parental rights pursuant to Code § 16.1-283(C)(2), which states that a court may terminate parental rights if:

> The parent or parents, without good cause, have been unwilling or unable within a reasonable period of time not to exceed twelve months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end.

The circuit court specifically found that mother was not unwilling, but that she was unable, to substantially remedy the conditions that led to and required the children's placement in foster care. The circuit court stated to mother at the conclusion of the evidence and argument, "I don't think that

you lack the desire to do what is right by your children, but I think it has been demonstrated by the evidence here that perhaps the capacity to do that does not exist."

Contrary to mother's arguments, the evidence proved that she did not remedy her mental health and substance abuse issues, which were the conditions that had led to the children's placement in foster care.

The Department had been involved with mother and her children since 2008. When the Department began working with mother in 2008, the JDR court's orders identified the same issues which mother was still unable to resolve in 2016, namely issues of substance abuse and mental health. Upon her return from North Carolina in November 2010, mother resumed receiving services from the Department until she transferred custody of the two oldest children to the maternal grandmother. In June 2015, when Carter was assigned to mother's case, Carter encouraged mother to seek treatment for substance abuse and obtain mental health services with the Community Services Board. Despite receiving Carter's consistent reminders of services with which she needed to engage, mother ignored these services. Furthermore, mother believed that there was nothing wrong with her and that she had no need for therapy, even though Dr. Mansaray's report stated that mother presented with a moderate risk for child neglect and that concerns about her parenting skills were warranted.

In summary, contrary to her argument that she had substantially remedied the conditions that led to the children's placement in foster care, mother presented no evidence in the record to support these claims. Mother did not attend counseling sessions to address her mental health issues as recommended by her counselor and told her social worker that she did not need therapy, despite evidence to the contrary. Mother also did not address her long-standing substance abuse issues. Mother not only failed to substantially remedy the conditions that led to the children's placement in foster care, but she did not even acknowledge that the conditions existed.

*Assignment of error #2*

Mother argues that the trial court erred by terminating her parental rights because the Department did not provide her with reasonable and appropriate services to remedy the conditions that led to the children's placement in foster care. She asserts that the Department knew that she lacked the capacity to understand written communication, and it did not adequately explain orally to her what she needed to do.

"'Reasonable and appropriate' efforts can only be judged with reference to the circumstances of a particular case. Thus, a court must determine what constitutes reasonable and appropriate efforts given the facts before the court." Ferguson v. Stafford Cty. Dep't of Soc. Servs., 14 Va. App. 333, 338, 417 S.E.2d 1, 4 (1992).

Contrary to mother's assertions, the Department provided mother with numerous services, but she did not fully participate in them. The Department arranged for mother to work with a parenting coach, who testified that she was concerned with mother's ability to follow through because she had to redirect mother and remind her of what she had learned in the lessons.

To address mother's mental health issues, the Department provided mother with counseling services. The Department also referred mother for a psychological evaluation, but mother dismissed the report and the psychologist's recommendations.

To address mother's substance abuse problems, the Department encouraged mother to attend Marijuana Anonymous meetings, in addition to engaging in individual therapy. Mother did not follow through with these services and did not state what substance abuse service she would have used, if the Department made it available to her.

"The Department is not required 'to force its services upon an unwilling or disinterested parent.'" Logan, 13 Va. App. at 130, 409 S.E.2d at 463-64 (quoting Barkey v. Commonwealth, 2 Va. App. 662, 670, 347 S.E.2d 188, 192 (1986)).

The record, thus, shows that the Department did not fail to provide mother with reasonable and appropriate services to remedy the conditions that led to the children's placement in foster care.

*Assignment of error #3*

Mother argues that the trial court erred by terminating her parental rights because she was denied due process. She contends her inability to remedy substantially the conditions that led to her children being placed in foster care was "not due to any of her actions, but rather the inaction of the Department . . . to continue to work with her to bring her to a level whereby she could regain custody of her children."

"[T]he relationship between a parent and child is constitutionally protected by the Due Process Clause of the Fourteenth Amendment." Copeland v. Todd, 282 Va. 183, 198, 715 S.E.2d 11, 19 (2011) (citing Quilloin v. Walcott, 434 U.S. 246, 255 (1978)). The Supreme Court of the United States has characterized a parent's right to raise his or her child as "perhaps the oldest of the fundamental liberty interests recognized by this Court." Troxel v. Granville, 530 U.S. 57, 65 (2000).

> However, an individual's constitutional rights are not absolute; they must be balanced against competing legitimate interests of the state to protect the welfare of its citizens. Thus, although a parent and child have a constitutionally protected parent-child relationship, the state also has a recognized interest in protecting children from abuse and neglect in the home.

Wright v. Alexandria Div. of Soc. Servs., 16 Va. App. 821, 829, 433 S.E.2d 500, 505 (1993) (citations omitted).

Mother's due process rights were not violated. She attended the trial and was represented by counsel. She had the opportunity to present evidence and to cross-examine witnesses. The Department also had the duty to protect the children from abuse and neglect. As discussed above, the Department tried to work with mother and provided her with services to help her remedy the situation, but mother did not do so. Therefore, the trial court did not err in terminating mother's parental rights.

CONCLUSION

For the foregoing reasons, the trial court's ruling is affirmed.

<u>Affirmed.</u>