COURT OF APPEALS OF VIRGINIA

Present: Judges Petty, Athey and Senior Judge Clements

UNPUBLISHED

SUZANNE SHELTON

v.      Record No. 0990-20-1

NORFOLK DEPARTMENT
 OF HUMAN SERVICES

MEMORANDUM OPINION*
PER CURIAM
FEBRUARY 2, 2021

FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
Everett A. Martin, Jr., Judge

(Tiffany Crawford; Morris, Crawford & Currin, P.C., on brief), for
appellant.

(Erikka M. Massie; Holly S. Lane, Guardian *ad litem* for the minor
children; Office of the City Attorney; Lane & Perkinson, P.C., on
brief), for appellee.

Suzanne Shelton (mother) appeals the orders terminating her parental rights to her children,

A.S. and A.S.T. Mother argues that the circuit court erred in ruling that the evidence was sufficient

to terminate her parental rights and that the termination would be in the children's best interests.

Mother also asserts that the circuit court violated her "constitutional right to privacy to raise her

child as she sees fit." Upon reviewing the record and briefs of the parties, we conclude that this

appeal is without merit. Accordingly, we summarily affirm the decision of the circuit court. See

Rule 5A:27.

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

BACKGROUND[1]

"On appeal from the termination of parental rights, this Court is required to review the evidence in the light most favorable to the party prevailing in the circuit court." Yafi v. Stafford Dep't of Soc. Servs., 69 Va. App. 539, 550-51 (2018) (quoting Thach v. Arlington Cnty. Dep't of Hum. Servs., 63 Va. App. 157, 168 (2014)).

Mother is the biological mother to A.S. and A.S.T.  On June 29, 2017, the Norfolk Department of Human Services (the Department) received a report that A.S. suffered from "numerous significant medical issues," was not compliant with her medication, and had missed several medical appointments.[2]  Mother did not reschedule A.S.'s appointments.  A.S. and A.S.T. also had missed a "significant" number of school days, requiring the intervention of the Norfolk Juvenile and Domestic Relations District Court (the JDR court) for truancy concerns.  The Department tried to engage mother and provide services, but mother refused to cooperate.

The Department removed the children from mother's care, and the JDR court entered emergency and preliminary removal orders.  At the time of the removal, A.S. was fifteen years old, and A.S.T. was eleven years old.  The JDR court subsequently adjudicated that A.S. was neglected and A.S.T. was at risk of abuse or neglect.  The JDR court entered child protective orders and returned custody of the children to mother.  At the dispositional hearing on December 15, 2017, the JDR court reverted custody of A.S. and A.S.T. to the Department due to mother's

---

[1] The record in this case was sealed.  Nevertheless, the appeal necessitates unsealing relevant portions of the record to resolve the issues appellant has raised.  Evidence and factual findings below that are necessary to address the assignments of error are included in this opinion. Consequently, "[t]o the extent that this opinion mentions facts found in the sealed record, we unseal only those specific facts, finding them relevant to the decision in this case.  The remainder of the previously sealed record remains sealed." Levick v. MacDougall, 294 Va. 283, 288 n.1 (2017).

[2] During its investigation, the Department learned that the family had lived previously in Delaware, where child protective services had received four reports of lack of supervision and medical neglect issues.  Mother was "uncooperative" with Delaware child protective services.

noncompliance, and the children entered foster care again. Mother did not appeal the dispositional orders.

The Department met with mother to discuss what was necessary for reunification. Mother had to participate in a parenting capacity and psychological evaluation and follow all recommendations. The Department also required mother to participate in visitation, cooperate with service planning and the Department, complete criminal and child protective services background checks, participate in parenting classes and reunification services, and maintain consistent contact with the Department. Mother also had to maintain safe and stable housing and demonstrate that she could financially care for herself and the children. Mother, however, refused to cooperate with the Department and complete the required services.

After the children entered foster care, the Department learned that the children had special needs. A.S.T. had "chronic asthma," and on January 20, 2018, A.S.T. had a severe asthma attack, causing him to be hospitalized and intubated. The Department attempted to notify mother of A.S.T.'s hospitalization but had to leave a voicemail message. Two days after A.S.T.'s admission, the hospital contacted the Department because mother was being disruptive at the hospital. Mother was asked to leave the hospital after she pulled on A.S.T.'s tubes and threatened the hospital staff and foster parents. Thereafter, the JDR court issued a "no-contact" order between mother and A.S.T.[3] After A.S.T.'s discharge from the hospital, he required counseling services, which were provided.

A.S. had numerous medical, behavioral, and educational concerns. Between late January and early April 2018, A.S. was hospitalized twice at Kempsville Behavioral Center (Kempsville) for suicidal ideations. The Department referred A.S. for psychiatric and counseling services. Then, on April 14, 2018, A.S. was admitted again to Kempsville for long term residential

---

[3] Mother's visitation with A.S.T. was later restored.

treatment, after having additional suicidal ideations and absconding from the foster home for two days. The Department and A.S.'s treatment team restricted mother's contact with A.S. due to mother's "inappropriate behaviors" and A.S.'s "reactionary behaviors" when discussing mother. On June 13, 2019, A.S. was discharged from Kempsville and placed in a "residential step-down sponsorship home" with a foster family who could provide constant supervision.

While the children were in foster care, mother was unwilling to participate in the required services. By December 2018, mother started participating in reunification services, but she still declined many of the recommended services, including individual therapy, and medication management, parenting capacity evaluation and mental health assessment.[4] She repeatedly claimed that she "did not need" those services.

Beginning in February 2019, the Department allowed weekly supervised visitation between A.S.T. and mother. The visits reportedly were "good." Mother consistently visited A.S.T. until October 2019, when mother started cancelling or not appearing for scheduled visits.

On September 20, 2019, the JDR court approved the foster care goal of adoption; mother appealed the ruling to the circuit court. On January 24, 2020, the JDR court entered orders terminating mother's parental rights to A.S. and A.S.T. Mother appealed the JDR court's termination orders to the circuit court.

On July 22, 2020, the parties appeared before the circuit court on the consolidated appeals.[5] At the time of the circuit court hearing, A.S.T. was fourteen years old, and A.S. was seventeen, almost eighteen, years old. A.S.T. had been in the same foster home since he first entered foster care in September 2017. Mother started contacting A.S.T. via his cell phone, and

---

[4] Mother had appointments for a mental health assessment and parenting capacity evaluation, but she did not keep the appointments.

[5] Mother chose to represent herself at the circuit court hearing, but she had standby counsel.

- 4 -

by March 2020, she reported to the reunification worker that she no longer wanted supervised in-person visitations. The Department presented evidence that A.S.T. was "doing very well" in foster care. In addition, A.S. was "doing really well" and "thriving" in the placement she was in at the time of the circuit court hearing. Mother and A.S. did not have contact with one another based on A.S.'s wishes and her counselor's recommendations.

Mother admittedly had not completed the required services. Furthermore, mother was aware that if she did not complete the services, then the courts could terminate her parental rights.

After hearing the evidence and arguments, the circuit court approved the foster care goal of adoption and terminated mother's parental rights to A.S. and A.S.T. under Code § 16.1-283(C)(2). This appeal followed.

ANALYSIS

*Termination of parental rights*

"On review, '[a] trial court is presumed to have thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests.'" Castillo v. Loudoun Cnty. Dep't of Fam. Servs., 68 Va. App. 547, 558 (2018) (quoting Logan v. Fairfax Cnty. Dep't of Hum. Dev., 13 Va. App. 123, 128 (1991)). "Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." Fauquier Cnty. Dep't of Soc. Servs. v. Ridgeway, 59 Va. App. 185, 190 (2011) (quoting Martin v. Pittsylvania Cnty. Dep't of Soc. Servs., 3 Va. App. 15, 20 (1986)).

Mother argues that the circuit court erred in finding that there was clear and convincing evidence to support the termination of her parental rights under Code § 16.1-283(C)(2) and that the termination was in the children's best interests. Mother contends that she completed some of

the services, such as obtaining housing, but acknowledges that she did not complete all the services, including the parenting capacity evaluation and mental health assessment. She explains that she did not complete those services "due to a lack of trust" in the Department.

Code § 16.1-283(C)(2) states that a court may terminate parental rights if:

> The parent or parents, without good cause, have been unwilling or unable within a reasonable period of time not to exceed 12 months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end.

"[S]ubsection C termination decisions hinge not so much on the magnitude of the problem that created the original danger to the child, but on the demonstrated failure of the parent to make reasonable changes." Yafi, 69 Va. App. at 552 (quoting Toms v. Hanover Dep't of Soc. Servs., 46 Va. App. 257, 271 (2005)).

Assuming without deciding that mother preserved her arguments for appeal, the circuit court did not err in terminating her parental rights. The Department repeatedly reviewed with mother the services that she needed to complete before she could be reunited with her children, and mother acknowledged that she knew what was expected of her. Mother continually refused to participate in all the services and claimed that she did not need them. The circuit court found that mother "knew what the consequences would be if she did not comply despite being given a great deal of time and the opportunity to have many services. She did not comply."

At the time of the circuit court hearing, the Department had been involved with the family for approximately three years. The children had special needs and were doing well in their placements. Mother chose not to participate in the necessary services. "It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his [or her] responsibilities." Tackett v. Arlington Cnty.

Dep't of Hum. Servs., 62 Va. App. 296, 322 (2013) (quoting Kaywood v. Halifax Cnty. Dep't of Soc. Servs., 10 Va. App. 535, 540 (1990)).  Accordingly, the circuit court did not err in terminating mother's parental rights.

*Constitutional right*

Mother also asserts that the circuit court violated her "constitutional right to privacy to raise her child as she sees fit."  "The parent-child relationship 'is a constitutionally protected liberty interest under the Due Process Clause of the Fourteenth Amendment.'"  Lively v. Smith, 72 Va. App. 429, 441 (2020) (quoting L.F. v. Breit, 285 Va. 163, 182 (2013)).  "Indeed, the Supreme Court of the United States has characterized a parent's right to raise his or her child as 'perhaps the oldest of the fundamental liberty interests recognized by [the] Court.'"  Id. (quoting L.F., 285 Va. at 182).  "However, an individual's constitutional rights are not absolute; they must be balanced against competing legitimate interests of the state to protect the welfare of its citizens."  Wright v. Alexandria Div. of Soc. Servs., 16 Va. App. 821, 829 (1993).

The Department first became involved with the family because of medical neglect and truancy issues with the children.  The Department followed the statutes to protect the children from harm.  The JDR court had adjudicated that A.S. was a neglected child and A.S.T. was at risk of being abused or neglected, and mother did not appeal the dispositional orders.  The Department offered numerous services to mother to attempt reunification, but mother refused to cooperate.  Thus, the circuit court did not violate mother's constitutional rights when it terminated her parental rights.

CONCLUSION

For the foregoing reasons, the circuit court's ruling is summarily affirmed.  Rule 5A:27.

Affirmed.